Michael D. Braun (SBN 167416)
**BRAUN LAW GROUP, P.C.**
1999 Avenue of the Stars, Ste. 1100
Los Angeles, California 90067
Telephone:  (310) 836-6000
Facsimile:  (310) 836-6010
Email:  service@braunlawgroup.com

STEPHEN GARDNER (*pro hac vice* to be sought)
AMANDA HOWELL (*pro hac vice* to be sought)
**STANLEY LAW GROUP**
6116 N. Central Expressway, Suite 1500
Dallas, Texas 75206
Telephone:  (214) 443-4300
Facsimile:  (214) 443-0358
Email:  steve@consumerhelper.com
          ahowell@stanleylawgroup.com

*Attorneys for Plaintiff*
[additional counsel on signature page]

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **ESTELLE SHANE, on behalf of herself and all others similarly situated,**<br><br>**Plaintiff,**<br><br>v.<br><br>**FLORIDA BOTTLING, INC.,**<br><br>**Defendant.** | **CASE NO.: 17-cv-2197**<br><br>**CLASS ACTION**<br><br>**COMPLAINT FOR DAMAGES, EQUITABLE, DECLARATORY, AND INJUNCTIVE RELIEF**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff, by her attorneys, brings this class action against Defendant Florida Bottling, Inc. ("Defendant" or "Lakewood"), on her own behalf and on behalf of all others similarly situated, and alleges as follows based upon information and belief and the investigation of her counsel.

## INTRODUCTION

1.      This is a class action on behalf of a California class of consumers who purchased Lakewood Organic Juices ("Juices") bearing the phrases "cold pressed" and "fresh pressed" on their labels.

2.      Lakewood markets itself as a juice company with a diverse line of pure organic and premium fruit juice products that claim to be "fresh pressed 100% pure organic and premium juices, with no additives or artificial ingredients of any kind." Lakewood website, http://www.lakewoodjuices.com/about (last visited on Mar. 9, 2017).

3.      Lakewood represents that its Juices are both "cold pressed" and "fresh pressed." These representations are false and misleading because Lakewood Juices are heat processed (pasteurized).

4.      Over the past several years, the most significant driver in the juice industry has been consumer demand for fresh and minimally processed juices. Such juices are an alternative to the majority of juices in the marketplace that have been pasteurized and sit on store shelves for months. The terms "cold pressed" and "fresh" are material representations that carry a specific meaning in both law and logic for the consuming public.

5.      By law, the term "fresh," when used on a food label in a manner that suggests or implies that the food is unprocessed, means that the food has not been subjected to thermal processing or any other form of preservation. In other words, juice that has been pasteurized cannot be labeled with the term "fresh." The law is clear on the matter

and the United States Food and Drug Administration ("FDA") uniformly enforces it as well.

6.   The term "cold pressed" is a non-thermal processing method that uses high pressure to kill bacteria rather than heat thereby maintaining most of the juice's nutrients and living enzymes, which otherwise get destroyed by heat.

7.   Lakewood seeks to take advantage of the consumer demand for fresh and non-thermally processed juices by labeling its Juices as both "fresh pressed" and "cold pressed."

8.   Lakewood represents to consumers that its Juices are both cold pressed and fresh pressed in bold, italic, underlined, and large font on the front labels of the Juice bottles. But the truth is that Lakewood Juices are neither. Indeed, on the back of the label, in much smaller print, buried in the middle of a paragraph, Lakewood describes its Juices as pasteurized—a fact that renders the representations on the front of the Juice labels false and misleading.

9.   Plaintiff alleges that Lakewood's conduct violates the unlawful, unfair, and fraudulent prongs of the Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, et seq. (the "UCL"), violates the False Advertising Law, Cal. Bus. & Prof. Code §§ 17500, et seq. (the "FAL"), violates the Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750, et seq. (the "CLRA"), breaches express warranty (Cal. Com. Code § 2313) and the implied warranty of merchantability (Cal. Com. Code § 2314). Plaintiff also alleges in the alternative that Lakewood's conduct is grounds for restitution on the basis of quasi-contract/unjust enrichment.

10.   Plaintiff also seeks injunctive and declaratory relief based upon Lakewood's conduct asserted in this Complaint. As of the date of this Complaint, upon information and belief, Lakewood continues to advertise and sell its Juices as cold pressed and fresh pressed. Even if Lakewood elected to remove the offending labels, they are not presently enjoined from putting the representations back on its Juice labels at will

and continuing to mislead the consuming public. Accordingly, Plaintiff seeks declaratory and injunctive relief to ensure that Lakewood removes all representations describing its Juices as either "cold pressed" or "fresh pressed."

## PARTIES

11.    Plaintiff Estelle Shane is a resident of Los Angeles, California. Ms. Shane purchased Lakewood's Pomegranate, Carrot, and Pineapple juices each of which claimed to be both "cold pressed" and "fresh pressed" despite the fact the Juice had been pasteurized. The representations that the Juice was both cold pressed and fresh pressed were material to Ms. Shane's decision to purchase the Juice. She did not know that the Juice was, in fact, pasteurized and therefore neither cold pressed nor fresh pressed. Ms. Shane purchased Lakewood Organic Juices because she is committed to eating well and committed to feeding her family in a wholesome manner. She, like other consumers, reads products' front labels and relies upon them in making her purchasing decisions. Ms. Shane read the label on the Juices and relied on their representations in making her purchase. Had she known the truth about the representations made on the Juice labels, she would not have purchased them.

12.    Defendant Lakewood is a subsidiary of Florida Bottling, Inc. with its principal place of business in Miami, Florida.

## JURISDICTION AND VENUE

13.    Jurisdiction of this Court is proper under 28 U.S.C. § 1332(d)(2). Diversity jurisdiction exists as Plaintiff Shane resides in Los Angeles County. Lakewood is incorporated and maintains its principal place of business in Florida. The class ("Class") consists of citizens and residents of California. The amount in controversy exceeds $5,000,000 for the Representative Plaintiff and members of the Class collectively, exclusive of interest and costs, by virtue of the combined purchase prices paid by Plaintiff and the Class, and the profits reaped by Lakewood from its transactions with Plaintiff

1  and the Class, as a direct and proximate result of the wrongful conduct alleged herein,

2  and by virtue of the injunctive and equitable relief sought.

3      14.    Venue is proper within this judicial district pursuant to 28 U.S.C. § 1391

4  because a substantial portion of the underlying transactions and events complained of

5  occurred and affected persons and entities located in this judicial district, and Lakewood

6  has received substantial compensation from such transactions and business activity in

7  this judicial district.

8                          **FACTUAL ALLEGATIONS**

9      15.    Lakewood manufactures and distributes Juices under the moniker Lake-

10  wood Organics. Lakewood markets its Juices as premium, healthful juices that are a

11  natural source of antioxidants, phytochemical nutrients, dietary fiber, vitamins, and

12  minerals. Lakewood makes material claims that its Juices are "cold pressed" and "fresh

13  pressed."



16.     As further detailed below, "cold pressed" and "fresh pressed" are mate-rial representations that carry a specific meaning in both law and logic for the consum-ing public. Specifically, juices that are fresh or processed by cold pressure cannot be thermally processed.

17.     Lakewood's representations are false and misleading. Despite represent-ing to consumers that its Juices are cold pressed and fresh pressed in bold, italic, un-derlined and large font, the truth is that Lakewood juices are neither. Indeed, on the back of the label, in much smaller print, buried in the middle of a paragraph, Lake-wood reveals its Juices are pasteurized—thereby rendering the representations on the front of the juice labels false and misleading.



## PASTEURIZATION

18.     Today's juice market is highly diverse. On one end of the spectrum you have standard bottled juices most typically found on store shelves. These products have been pasteurized, are generally not refrigerated, and have long shelf lives. On the other hand, you have fresh juices that are made with no thermal processing, have short shelf lives, sold at premium prices and are routinely considered more healthful that the alternatives. The trend in the juice industry over the past several years has favored un-processed premium juices, which address consumer desires for minimally processed foods that retain their original nutritional benefits (*e.g.*, enzymes, micronutrients, vita-mins, and minerals). *See, e.g.*, Mary MacVean, Juicing Trend Still Going Strong In 2015, L.A. Times (Jan. 29, 2015), http://www.latimes.com/health/la-he-juice-20150131-story.html. Two of the most significant categories in the premium juice market are juices that are fresh pressed and those that are cold pressed.

19.     Pasteurization is a process by which foods are heated to a specific tem-perature for a specific amount of time to kill potentially harmful bacteria. FDA, through its Center for Food Safety and Applied Nutrition, sets detailed guidelines for the pasteurization of fruit juices. These heating processes vary in length of time from 0.3 to 6.0 seconds, with heating temperatures between 160-180°F. PennState Exten-sion, Food Safety, Juice HACCP Resources, FDA Recommended Pasteurization Time/Temperatures, *available at* http://extension.psu.edu/food/safety/course-follow-up-information/juice-haccp-resources/food-safety-juice-haccp-regula-tions/FDA%20Recommended%20Pasteurization%20Time.pdf.

20.     While the goal of pasteurization—to eliminate harmful pathogens—is critical to food safety, it is also accompanied by a real and perceived downside—that food subjected to thermal processing kills not only harmful bacteria, but beneficial mi-croorganisms, vitamins, and enzymes as well, leaving the food devoid of its nutri-tional benefits otherwise available in its original state.

21.    As a result of the nutritional loss suffered during pasteurization, consumers interested in recapturing the original nutritional benefits of fruits and vegetables began embracing a concept known as juicing—a process where juice is extracted from fresh fruits or vegetables without additional processing. The resulting liquid contains most of the vitamins, minerals and plant chemicals (phytonutrients) found in the whole fruit. Mayo Clinic, Nutrition and Healthy Eating, *Is Juicing Healthier Than Eating Whole Fruits or Vegetables?*, http://www.mayoclinic.org/healthy-lifestyle/nutrition-and-healthy-eating/expert-answers/juicing/faq-20058020 (last visited Mar. 9, 2017). The advent of juicing, along with consumer demand for fresh products that maintain their nutritional load, began to transform the commercial juice market. "The juice category keeps getting closer to fresh-squeezed, and improving price points as it does. By constantly raising the ceiling on process technology, the top end of the juice category continues to allow the development of new brands and a new definition of fresh." Latif, Ray (12 September 2013). "The Juice Uprising," BevNET.com, http://www.bevnet.com/magazine/issue/2013/the-juice-uprising (last visited Mar. 9, 2017). By 2013, the juice market was estimated to be between $1.6 to 3.4 billion.

22.    While freshly made juice became incredibly popular among the increasingly health conscious public, its higher price, short shelf life, and increased exposure to harmful bacteria (from not being processed), left a natural opportunity for juice manufacturers if only they could create a juice that was processed (thereby eliminating harmful bacteria and extending shelf life), while still retaining the taste and nutritional load of the underlying fruit or vegetable. Enter cold pressed juices.

## COLD PRESSED JUICE AND NON-THERMAL PROCESSING

23.    "Cold Pressed, usually refers to the technique by which fruits or vegetables are squeezed or pressed in a machine to extract the juice from them. Once the fruits and veggies are pressed, their contents are bottled and then subjected to Cold Pressure Technology." Cold Pressure Council, What Is Cold Pressure,

1  http://www.coldpressure.org/en/what-is-cold-pressure (last visited Mar. 9, 2017). In

2  contrast to pasteurized juices, cold pressed juices are processed with a technology,

3  called High Pressure Processing, that uses high pressure instead of heat thereby main-

4  tain most of the juice's nutrients and living enzymes, which otherwise get destroyed

5  by heat. "Cold pressed juice is as close to a raw fruit or vegetable as possible." Rajiv

6  Singh, Can Cold-Pressed Juice Startups Like RAW Pressery Give Established Bever-

7  age Brands a Run for Their Money?, Econ. Times (July 31, 2016), http://econom-

8  ictimes.indiatimes.com/articleshow/53469372.cms?utm_source=contentofinter-

9  est&utm_medium=text&utm_campaign=cppst.

10    24.    High Pressure Processing ("HPP") subjects liquids to pressures between

11  100 and 800 MPa. Pressures used in the HPP of foods appear to have little effect on

12  covalent bonds. Thus, foods subjected to HPP treatment at or near room temperature

13  will not undergo significant chemical transformations due to the pressure treatment it-

14  self. Critically, HPP provides a non-thermal alternative to pasteurization. *See, e.g.*,

15  FDA, Kinetics of Microbial Inactivation for Alternative Food Processing Technolo-

16  gies—High Pressure Processing, http://www.fda.gov/Food/FoodScienceResearch/SafePractic-

17  esforFoodProcesses/ucm101456.htm (last visited Mar. 9, 2017); Lori F. Pivarnik et al.,

18  Non-Thermal or Alternative Food Processing Methods to Enhance Microbial Safety

19  and Quality (Nov. 2014), *available at* http://ucfoodsafety.ucda-

20  vis.edu/files/227891.pdf.

21    25.    "High Pressure Processing is recognized by the FDA, USDA, Health

22  Canada, the EU and other authoritative bodies for preserving freshness and increasing

23  shelf life without preservatives or high heat. The process leads to the elimination of

24  harmful bacteria while maintaining a higher yield of vitamins, minerals and enzymes,

25  and preserving a fresher taste." Cold Pressure Council, What Is Cold Pressur,

26  http://www.coldpressure.org/en/what-is-cold-pressure (last visited Mar. 9, 2017).

27

26.    As explained in *Pulsed Electric Fields for Food Processing Technology*, Maged E.A. Mohamed and Ayman H. Amer Eissa (2012), p 277. http://cdn.intechopen.com/pdfs-wm/38363.pdf.

> Nonthermal technologies represent a novel area of food processing and are currently being explored on a global scale; research has grown rapidly in the last few years in particular. The main purpose of thermal processing is the inactivation of pathogenic microorganisms and spores (depending on the treatment) to provide consumers with a microbiologically safe product. However, despite the benefits of thermal treatment, a number of changes take place in the product that alter its final quality, for example, flavor, color, texture, and general appearance. Now, consumers are looking for fresh-like characteristics in their food, along with high sensorial quality and nutrient content. Consumers are more aware of food content and the technologies used to process their food, showing a higher preference for natural products (Evans and Cox, 2006) free of chemicals and/or additives. Thus, the need for processing alternatives that can achieve microbial inactivation, preserve food's fresh like characteristics, and provide environment friendly products, all at a reasonable cost, has become the present challenge of numerous food scientists/technologists around the world.
>
> * * *
>
> Nonthermal processing technologies were designed to eliminate the use of elevated temperatures during processing and so avoid the adverse effects of heat on the flavour, appearance and nutritive value of foods (Barbosa-Canovas et al., 1999).

27.    As explained in *The Juice Uprising*, Sept 12, 2013 Bevnet, http://www.bevnet.com/magazine/issue/2013/the-juice-uprising

> The category of cold pressed, super-premium juice is really having its moment," said Chris Bruzzo, senior vice president, Channel Brand Management and general manager of Evolution Fresh. "You're in an environment where consumers are ready to make that journey into the next-generation of juice.
>
> * * *
>
> The transition has been swift, but it's not entirely unexpected. Trends toward health and wellness have exploded onto the U.S. market and fueled a roller coaster of change within food and beverage industries.

* * *

To achieve wider distribution and a longer shelf life for these juice products, companies turned to [High Pressure Processing] ("HPP"), a method of processing that, unlike pasteurization, uses high pressure instead of heat to inhibit bacteria growth in raw foods and beverages. The juice, which is already bottled when it undergoes HPP, does not come in actual contact with pressure. Although HPP gives raw foods a shelf life of only a few weeks, it is widely regarded as superior to pasteurization (which is how most juice products are processed) in maintaining nutrition and flavors from raw ingredients.

* * *

HPP has helped create the cracks for what Church and others see as potentially a seismic shift in the way mainstream consumers view and purchase juice. They argue that the wave of new cold pressed juices offer quality and taste that shatters the mold of traditional packaged juice, and it's the emergence of HPP that is the single biggest factor behind greater adoption of the products.

28.    Lakewood pasteurizes its juices. Lakewood website, FAQs, http://www.lakewoodjuices.com/faqs#top (last visited Mar. 9, 2017). They are not processed by High Pressure Processing, nor any other form of non-thermal processing. Accordingly, they cannot represent that their juices are cold pressed. Doing so is false, misleading, and deceptive to the consuming public.

## FRESH PRESSED

29.    The term ''fresh'' has been and remains one of the most desirable food label claims among consumers and is consistent with the increasing trend for clean label /minimally processed foods. *See, e.g*., What consumers want—and don't want—on food and beverage labels, A.E. Sloan (2003); What Consumers Want on Food Labels, Hartman Group (2015).

30.    The term fresh in the context of making food choices has long been material to the consuming public. As a result, in January 1993, the FDA established labeling regulations that specifically govern the use of the terms "fresh," "freshly (*e.g*., "freshly baked") and "fresh frozen" as they appear on the labeling of foods, including the use of these terms in brand names and as sensory modifiers.

31.    The final rule was memorialized in 21 CFR 101.95 which states that the term "fresh," when used on the label or in labeling of a food in a manner that suggests or implies that the food is unprocessed, means that the food is in its raw state and has not been frozen or subjected to any form of thermal processing or any other form of preservation.

32.    The regulation was necessary "because of the continued misuse of the term "fresh" and related terms in the marketplace." Department of Health and Human Services, Food and Drug Administration, 21 CFR Part 101, Docket No. OON-13511, Food Labeling; Use of the Term "Fresh" for Foods Processed With Alternative Non-thermal Technologies; Public Meeting July 21, 2000. https://www.federalregis-ter.gov/documents/2000/07/03/00-16716/food-labeling-use-of-the-term-fresh-for-foods-processed-with-alternative-nonthermal-technologies.

33.    The FDA determined that "it was necessary to establish a definition for "fresh" to preclude the type of misuse that [it] encountered most often, i.e., use of the term to imply that a food is unprocessed, when in fact it has been processed. Thus, provisions in § 101.95 (21 CFR 101.95) govern the use of the term "fresh" when used on the labels or in labeling of foods to suggest or imply that the food is unprocessed. Generally, the appearance of the term "fresh" on a label or in labeling means that the food in its raw state or finished form has not been frozen or subjected to any form of thermal processing or any other form of preservation." *Id.*

34.    FDA defined pasteurization as a heat treatment sufficient to destroy vege-tative cells of pathogens. Guidance for Industry: Juice HACCP Hazards and Controls Guidance First Edition; Final Guidance (March 2004) *available at* http://www.fda.gov/Food/GuidanceRegulation/GuidanceDocumentsRegulatoryInfor-mation/Juice/ucm072557.htm. It is a thermal process within the meaning in 21 CFR 101.95.

35.    Since the passage of 21 CFR 101.95, FDA has routinely and unequivo-cally reasserted and enforced the black letter mandate of 21 CFR 101.95—that the

term "fresh" cannot be used in conjunction with food that has been subject to any form of thermal processing.

36.    For example, in October 2009, the FDA warned Shik Poom Inc. that its "Fresh Tuna" product was misbranded within the meaning of section 403(a)(1) of the Act [21 U.S.C. 343(a)(1)] because it was canned and therefore could not be properly labeled as "fresh." "Your use of the word "fresh" implies that this product is unprocessed or unpreserved. However, the product fails to meet definition of fresh as outlined in 21 CFR 101.95(a), because it is not in its raw state and has been subjected to either a form of thermal processing or another form of preservation." *Available at* http://www.fda.gov/iceci/enforcementactions/warningletters/2009/ucm189681.htm.

37.    Less than 3 years later the FDA sent a similar warning letter to Michelle's Miracle, Inc. this time finding the labeling of their tart cherry juice products false and misleading for the exact reasons raised in this Complaint. "The webpages [of various juice products]..... bear the statement "Always fresh from the farm to the bottle." However, these webpages also bear the statement "flash-pasteurized to preserve the rich flavor and potency of the cherries," indicating that the products have been preserved via thermal processing. ...... Under 21 CFR 101.95, the term "fresh," when used on the label or in labeling of a food in a manner that suggests or implies that the food is unprocessed, means that the food is in its raw state and has not been frozen or subjected to any form of thermal processing or any other form of preservation. Because your products are made from frozen pasteurized tart cherry concentrate, they do not meet the requirements for a "fresh" claim and, therefore, the labeling of these products is false and misleading."*Available at* http://www.fda.gov/iceci/enforcementactions/warningletters/2012/ucm307676.htm

38.    The FDA's commitment to enforcing 21 CFR 101.95 has not waned as it continues to issue warning letters on abuse of the term fresh on pasteurized products. On August 4, 2015, FDA issued a warning to P&S Ravioli Company over the labeling of its Jumbo Lobster Ravioli & Linguine. "The label states "So enjoy the quality line

of P&S products, and you will experience the quality, freshness, and tradition we have combined to bring you the finest pasta that ever graced your table." The pasta is labeled "Keep Frozen Until Ready To Use" and contains a processed ingredient (*e.g.*, "Pasteurized Whole Eggs"). Under 21 CFR 101.95(a), the term "fresh," when used on the label or in labeling of a food in a manner that suggests or implies that the food is unprocessed, means that the food is in its raw state and has not been frozen or subjected to any form of thermal processing or any other form of preservation. Because the product is frozen and contains a processed ingredient, we question whether the product should be characterized as "fresh." *Available at* http://www.fda.gov/iceci/enforcementactions/warningletters/2015/ucm457402.htm.

39.    Finally, even last year FDA reiterated its long-standing position that a product which has been subject to thermal processing simply cannot be labeled as fresh. In a warning letter issued to Aloe Farms, Inc., on July 15, 2016, FDA stated that, "[t]he characterization of the Aloe Vera Juice as "fresh" on the firm's website, www.thealoeverastore.us, is false because it does not meet the requirements of 21 CFR 101.95. The term "fresh" when used on the label or in labeling of a food in a manner that suggests or implies that the food is unprocessed, means that the food is in its raw state and has not been frozen or subjected to any form of thermal processing or any other form of preservation, except as provided in paragraph 21 CFR 101.95(c). The webpage states "Our freshly make [sic] Aloe Farms Aloe Vera Juice. The miracle plant ... is bottled fresh and pure .... " The product is made with several preservatives and has been cooked. Therefore, it cannot be characterized as "fresh." *Available at* http://www.fda.gov/iceci/enforcementactions/warningletters/2016/ucm516593.htm.

40.    Lakewood prominently states on the front label of each juice bottle that it is "fresh pressed," despite the fact the Juice is pasteurized. Lakewood's use of the term fresh is therefore false, misleading, and deceptive to the consuming public.

## LAKEWOOD HAS REFUSED TO STOP ITS WRONGDOING

41.     On or about June 7, 2016, Ms. Shane transmitted a demand letter pursuant to the Consumer Legal Remedies Act in which she explained the violations detailed herein and demanded that the labels be corrected and that she and the class of similarly situated consumers of Lakewood be compensated for the deception. As of this date, Lakewood has refused to take any corrective action.

## CLASS ACTION ALLEGATIONS

42.     Plaintiff brings this action on behalf of herself and on behalf of all others similarly situated defined as follows: All persons who purchased a purchased a Lakewood Juice bearing the label "cold pressed" and/or "fresh pressed" as identified in this Complaint.

43.     Plaintiff brings this Class pursuant to Federal Rule of Civil Procedure 23(a), and 23(b)(1), 23(b)(2) and 23(b)(3).

44.     Excluded from the Class are: (i) Lakewood and its employees, principals, affiliated entities, legal representatives, successors and assigns; and (ii) the judges to whom this action is assigned.

45.     Upon information and belief, there are tens of thousands of members of the Class. Therefore, individual joinder of all members of the Class would be impracticable.

46.     There is a well-defined community of interest in the questions of law and fact affecting the parties represented in this action.

47.     Common questions of law or fact exist as to all members of the Class. These questions predominate over the questions affecting only individual Class members. These common legal or factual questions include but are not limited to:

a.   Whether Lakewood labeled its Juice Products as "fresh pressed" or "cold pressed;"

b.   Whether Lakewood pasteurizes its Juices;

---

COMPLAINT FOR DAMAGES, EQUITABLE, DECLARATORY, AND INJUNCTIVE RELIEF

    c.  Whether Lakewood exercised control over or otherwise participated in the marketing, advertising, or labeling of these Juices;

    d.  Whether Lakewood participated in the sales and distribution of the Juices;

    e.  Whether Lakewood's actions in labeling pasteurized products as cold pressed or fresh pressed was likely to deceive Class members or the general public;

    f.  Whether those representations violate the Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et seq*. (the "UCL");

    g.  Whether those representations violate the False Advertising Law, Cal. Bus. & Prof. Code §§ 17500, *et seq*. (the "FAL")

    h.  Whether those representations violate the Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750, *et seq*. (the "CLRA");

    i.  The appropriate measure of damages, restitutionary disgorgement, or restitution.

48.    Plaintiff's claims are typical of the claims of the Class, in that Plaintiff was a consumer who purchased a Juice that Lakewood represented to be fresh pressed or cold pressed despite the fact its Juices are pasteurized. Plaintiff, therefore, is no different in any relevant respect from any other Class Member who purchased Juices, and the relief sought is common to the Class.

49.    Plaintiff is an adequate representative of the Class because her interests do not conflict with the interests of the members of the Class she seeks to represent, and she has retained counsel competent and experienced in conducting complex class action litigation. Plaintiff and her counsel will adequately protect the interests of the Class.

50.    A class action is superior to other available means for the fair and efficient adjudication of this dispute. The damages suffered by each individual Class Member likely will be relatively small, especially given the relatively small cost of the Juices at issue and the burden and expense of individual prosecution of the complex litigation

COMPLAINT FOR DAMAGES, EQUITABLE, DECLARATORY, AND INJUNCTIVE RELIEF

necessitated by Lakewood's conduct. Thus, it would be virtually impossible for members of the Class individually to effectively redress the wrongs done to them. Moreover, even if members of the Class could afford individual actions, it would still not be preferable to class-wide litigation. Individualized actions present the potential for inconsistent or contradictory judgments. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

51.   In the alternative, the Class may be certified because Lakewood has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate preliminary and final equitable relief with respect to each Class.

## FIRST CAUSE OF ACTION
### (Breach of Express Warranty, Cal. Com. Code § 2313)

52.   Lakewood made express warranties to Plaintiff and members of the Class that the Juices they were purchasing were "cold pressed" and "fresh pressed."

53.   The "fresh pressed" and "cold pressed" express warranties made to Plaintiff and the Class appear on every label of the Juices. This promise regarding the nature of the Juices marketed by Lakewood specifically relates to the goods being purchased and became the basis of the bargain.

54.   Plaintiff and the Class purchased the Juices in the belief that they conformed to the express warranties that were made on the Juices' labels.

55.   Lakewood breached the express warranties made to Plaintiff and members of the Class by failing to supply goods that conformed to the warranties it made. As a result, Plaintiff and members of the Class suffered injury and deserve to be compensated for the damages they suffered.

56.   Plaintiff and the members of the Class paid money for the Juices. However, Plaintiff and the members of the Class did not obtain the full value of the advertised Juices. If Plaintiff and other members of the Class had known of the true nature of the Juices, they would not have purchased them, would not have made as many purchases,

or would not have been willing to pay the premium price associated with other  juices that are truly "fresh pressed" or "cold pressed." Accordingly, Plaintiff and members of the Class have suffered injury in fact and lost money or property as a result of Lakewood's wrongful conduct.

57.   Plaintiff and the Class are therefore entitled to recover damages, punitive damages, equitable relief such as restitution and disgorgement of profits, and declaratory and injunctive relief.

## SECOND CAUSE OF ACTION

### (Breach of Implied Warranty of Merchantability, Cal. Com. Code § 2314)

58.   Plaintiff and other Class members purchased the Juices, which Lakewood promoted, marketed, advertised, packaged and labeled using promises or affimations of fact on the Juice labels. Lakewood impliedly warranted that the Juices it sold conformed to these promises or affimations when they did not. Lakewood impliedly warranted that the Juices were of a particular kind and quality when they were not.

59.   Plaintiff and those similarly situated purchased the Juices, relied on Lakewood's representations that the Juices were fresh pressed or cold pressed.

60.   Lakewood breached the warranties implied at the time of sale in that Plaintiff and those similarly situated did not receive goods that they bargained for. Accordingly, the goods were not merchantable as conforming with the promises or affirmations of fact made on their labels, and were not merchantable as the kind and quality Lakewood represented them to be.

61.   As a proximate result of these breaches of warranty by Lakewood, Plaintiff and those similarly situated have suffered damages in an amount to be determined at trial in that, among other things, they purchased and paid for products that did not conform with the proises or affirmations of fact made on their labels, and were not of the kind and quality Lakewood represented. They were deprived of the benefit of their bar-

gain and spent money on products that did not have any value, had less value than warranted, or that they would not have purchased and used had they known the true facts about them.

### THIRD CAUSE OF ACTION
### ("Unlawful" Business Practices in Violation of
### The Unfair Competition Law ("UCL"), Bus. & Prof. Code §§ 17200, *et seq.*)

62.     The UCL defines unfair business competition to include any "unlawful, unfair or fraudulent" act or practice, as well as any "unfair, deceptive, untrue or misleading" advertising. Cal. Bus. Prof. Code § 17200.

63.     A business act or practice is "unlawful" if it violates any established state or federal law.

64.     California's Sherman Food, Drug, and Cosmetic Law ("Sherman Law"), Cal. Health & Safety Code § 109875 *et seq.*, broadly prohibits the misbranding of food. Cal. Health & Safety Code § 110765; See, also Cal. Health & Safety Code § 110660 ("Any food is misbranded if its labeling is false or misleading in any particular."). The Sherman Law incorporates all food labeling regulations and any amendments to those regulations adopted pursuant to the Food, Drug, and Cosmetic Act of 1938 ("FDCA") as the food labeling regulations of California. Cal. Health & Safety Code § 110100(a); *see also* Cal. Health & Safety Code §§ 110665, 110670.

65.     As described in detail above, by labeling its Juices as "fresh pressed," Lakewood violates at a minimum 21 CFR 101.95 as incorporated by the California Sherman Law. Independently, by labeling its Juices and cold pressed or fresh pressed, Lakewood also violates Cal. Health & Safety Code § 110660 (any food is misbranded if its labeling is false or misleading in any particular), which incorporates 21 U.S.C. 343(a)(1) (a food shall be deemed to be misbranded if its labeling is false or misleading in any particular).

66.     Lakewood violated, and continues to violate the Sherman Law, Article 6, Section 110660 and hence has also violated and continues to violate the "unlawful"

prong of the UCL through its use of the terms "fresh pressed" and "cold pressed" on the labels of its Juice Products that are pasteurized. Lakewood's identical conduct that violates the Sherman Law, also violates FDCA § 403(a)(1), 21 U.S.C. § 343(a)(1), which declares food misbranded under federal law if its "labeling is false and misleading in any particular." This identical conduct serves as the sole factual basis of each cause of action brought by this Complaint, and Plaintiff does not seek to enforce any of the state law claims to impose any standard of conduct that exceeds that which would violate FDCA § 403(a)(1).

67. By committing the unlawful acts and practices alleged above, Lakewood has engaged, and continues to be engaged, in unlawful business practices within the meaning of California Business and Professions Code §§ 17200, *et seq.*

68. Through its unlawful acts and practices, Lakewood has obtained, and continues to unfairly obtain, money from members of the Class. As such, Plaintiff requests that this Court cause Lakewood to restore this money to Plaintiff and all members of the Class, to disgorge the profits Lakewood made on these transactions, and to enjoin Lakewood from continuing to violate the Unfair Competition Law or violating it in the same fashion in the future. Otherwise, the Class may be irreparably harmed and denied an effective and complete remedy if such an order is not granted.

**FOURTH CAUSE OF ACTION**
**("Unfair" Business Practices in Violation of**
**The Unfair Competition Law ("UCL"), Bus. & Prof. Code §§ 17200, *et seq.*)**

69. The UCL defines unfair business competition to include any "unlawful, unfair or fraudulent" act or practice, as well as any "unfair, deceptive, untrue or misleading" advertising. Cal. Bus. Prof. Code § 17200.

70. A business act or practice is "unfair" under the Unfair Competition Law if the reasons, justifications and motives of the alleged wrongdoer are outweighed by the gravity of the harm to the alleged victims.

71.     Lakewood has and continues to violate the "unfair" prong of the UCL through its misleading description of the Juices as cold pressed and fresh pressed when the Juices are pasteurized. The gravity of the harm to members of the Class resulting from such unfair acts and practices outweighs any conceivable reasons, justifications, or motives of Lakewood for engaging in such deceptive acts and practices. By committing the acts and practices alleged above, Lakewood has engaged, and continues to engage, in unfair business practices within the meaning of California Business and Professions Code §§ 17200, *et seq.*

72.     Through its unfair acts and practices, Lakewood has obtained, and continues to unfairly obtain, money from members of the Class. As such, Plaintiff has been injured and requests that this Court cause Lakewood to restore this money to Plaintiff and the members of the Class, to disgorge the profits Lakewood has made on the Juices, and to enjoin Lakewood from continuing to violate the Unfair Competition Law or violating it in the same fashion in the future. Otherwise the Class may be irreparably harmed and denied an effective and complete remedy if such an Order is not granted.

## FIFTH CAUSE OF ACTION
### ("Fraudulent" Business Practices in Violation of
### The Unfair Competition Law ("UCL"), Bus. & Prof. Code §§ 17200, *et seq.*)

73.     The UCL defines unfair business competition to include any "unlawful, unfair or fraudulent" act or practice, as well as any "unfair, deceptive, untrue or misleading" advertising. Cal. Bus. & Prof. Code §17200.

74.     A business act or practice is "fraudulent" under the Unfair Competition Law if it actually deceives or is likely to deceive members of the consuming public.

75.     Lakewood's acts and practices of mislabeling the Juices as "fresh pressed" or "cold pressed," despite the fact that these Juices are pasteurized has the effect of misleading consumers into believing the Juices are something they are not.

76.    As a result of the conduct described above, Lakewood has been, and will continue to be, unjustly enriched at the expense of Plaintiff and members of the proposed Class. Specifically, Lakewood has been unjustly enriched by the profits it has obtained from Plaintiff and the Class from the purchases of its Juices.

77.    Through its unfair acts and practices, Lakewood has improperly obtained, and continues to improperly obtain, money from members of the Class. As such, Plaintiff requests that this Court cause Lakewood to restore this money to Plaintiff and the Class, to disgorge the profits Lakewood has made , and to enjoin Lakewood from continuing to violate the Unfair Competition Law or violating it in the same fashion in the future. Otherwise, the Class may be irreparably harmed and denied an effective and complete remedy if such an Order is not granted.

**SIXTH CAUSE OF ACTION**
**(False Advertising in Violation of**
**California Business & Professions Code §§ l7500, *et seq*.)**

78.    Lakewood uses advertising and packaging to sell its Juices. Lakewood is disseminating advertising regarding the Juices which by its very nature is deceptive, untrue, or misleading within the meaning of California Business & Professions Code §§ 17500, *et seq.* because those advertising statements contained on the labels are misleading and likely to deceive, and continue to deceive, members of the putative Class and the general public.

79.    In making and disseminating the statements alleged herein, Lakewood knew or should have known that the statements were untrue or misleading, and acted in violation of California Business & Professions Code §§ 17500, *et seq.*

80.    The misrepresentations and non-disclosures by Lakewood of the material facts detailed above constitute false and misleading advertising and therefore constitute a violation of California Business & Professions Code §§ 17500, *et seq.*

81.    Through its deceptive acts and practices, Lakewood has improperly and illegally obtained money from Plaintiff and the members of the Class. As such, Plaintiff

requests that this Court cause Lakewood to restore this money to Plaintiff and the members of the Class, and to enjoin Lakewood from continuing to violate California Business & Professions Code §§ 17500, *et seq.*, as discussed above. Otherwise, Plaintiff and those similarly situated will continue to be harmed by Lakewood's false and/or misleading advertising.

82.    Pursuant to California Business & Professions Code § 17535, Plaintiff seeks an Order of this Court ordering Lakewood to fully disclose the true nature of its misrepresentations. Plaintiff additionally requests an Order (1) requiring Lakewood to disgorge its ill-gotten gains, (2) award full restitution of all monies wrongfully acquired by Lakewood and (3), interest and attorneys' fees. Plaintiff and the Class may be irreparably harmed and denied an effective and complete remedy if such an Order is not granted.

83.    Lakewood's conduct is ongoing and continues to this date. Plaintiff and the Class are therefore entitled to the relief sought.

## SEVENTH CAUSE OF ACTION
### (Violation of the Consumers Legal Remedies Act, California Civil Code §§ 1750, *et seq.*)

84.    This cause of action is brought pursuant to the Consumers Legal Remedies Act, California Civil Code §§ 1750, *et seq.* (the "CLRA").

85.    Plaintiff and each member of the proposed Class are "consumers" within the meaning of Civil Code § 1761(d).

86.    The purchases of the Juices by consumers constitute "transactions" within the meaning of Civil Code § 1761(e) and the Juices constitute "goods" within the meaning of Civil Code § 1761(a).

87.    Lakewood has violated, and continues to violate, the CLRA in at least the following respects:

a. in violation of Civil Code § 1770(a)(5), Lakewood represented that the transaction had characteristics which it did not have;

b.  in violation of Civil Code § 1770(a)(7), Lakewood represented that its goods were of a particular standard, quality or grade, which they were not; and

c.  in violation of Civil Code § 1770(a)(9), Lakewood advertised its goods (*i.e.*, the Lakewood Products) with the intent not to provide what it advertised.

88.  Lakewood knew, or should have known, that its fresh pressed or cold pressed representations violated consumer protection laws, and that these statements would be relied upon by Plaintiff and the members of the Class.

89.  The fresh pressed or cold pressed representations were made to Plaintiff and all members of the Class. Plaintiff relied on the fresh pressed and cold pressed representations on Lakewood's labels. They each formed a material basis for her decision to purchase the Juices. Moreover, based on the very materiality of Lakewood's misrepresentations, concealments, and omissions uniformly made on or omitted from its Juice labels, reliance may be presumed or inferred for all members of the Class.

90.  Lakewood carried out the scheme set forth in this Complaint willfully, wantonly, and with reckless disregard for the interests of Plaintiff and the Class, and as a result, Plaintiff and the Class have suffered an ascertainable loss of money or property.

91.  Plaintiff and the members of the Class request that this Court enjoin Lakewood from continuing to engage in the unlawful and deceptive methods, acts and practices alleged above, pursuant to California Civil Code § 1780(a)(2). Unless Lakewood is permanently enjoined from continuing to engage in such violations of the CLRA, future consumers of Lakewood's Juices will be damaged by its acts and practices in the same way as have Plaintiff and the members of the proposed Class.

92.  On or about June 7, 2016, Plaintiff Shane, through her counsel and pursuant to Civil Code § 1782, sent Lakewood a certified letter notifying it of the conduct described herein and that such conduct was in violation of particular provisions of Civil Code § 1770. The letter demanded that Lakewood repair, or otherwise rectify, problems associated with its illegal behavior which are in violation of Civil Code § 1770. Lakewood accepted service of this letter.

93.    While Lakewood responded to the letter, it failed to meaningfully address Plaintiff's allegations. Accordingly, Plaintiff hereby requests damages from Lakewood as provided for in Civil Code § 1780:

      a.    Actual damages in excess of the jurisdictional limits of this Court;

      b.    statutory damages allowable under Civil Code § 1780;

      c.    punitive damages; and

      d.    any other relief which the Court deems proper; and court costs and attorneys' fees.

## EIGHTH CAUSE OF ACTION
### (Restitution Based On Quasi-Contract/Unjust Enrichment)

94.    Lakewood's conduct in enticing Plaintiff and the Class to purchase is Juices through the use of false and misleading packaging is unlawful because the statements contained on the Lakewood Juice Products' labels are untrue. Lakewood took monies from Plaintiff and the Class for products promised to be fresh pressed or cold pressed even though the Juices they sold are thermally processed. Lakewood has been unjustly enriched at the expense of Plaintiff and the Class as result of its unlawful conduct alleged herein, thereby creating a quasi-contractual obligation on Lakewood to restore these ill-gotten gains to Plaintiff and the Class.

95.    As a direct and proximate result of Lakewood's unjust enrichment, Plaintiff and the Class are entitled to restitution or restitutionary disgorgement in an amount to be proved at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of herself and on behalf of the other members of the Class and for the Counts so applicable on behalf of the general public request an award and relief as follows:

A.    An order certifying that this action is properly brought and may be maintained as a class action, that Plaintiff be appointed Class Representative, and Plaintiff's counsel be appointed Lead Counsel for the Class.

COMPLAINT FOR DAMAGES, EQUITABLE, DECLARATORY, AND INJUNCTIVE RELIEF

B.     Restitution in such amount that Plaintiff and all members of the Class paid to purchase Lakewood's Juices or paid as a premium over non-natural alternatives, or restitutionary disgorgement of the profits Lakewood obtained from those transactions, for Causes of Action for which they are available.

C.     Compensatory damages for Causes of Action for which they are available.

D.     Statutory damages allowable under Civil Code § 1780.

E.     Other statutory penalties for Causes of Action for which they are available.

F.     Punitive Damages for Causes of Action for which they are available.

G.     A declaration and Order enjoining Lakewood from advertising its Juices misleadingly, in violation of California's Sherman Food, Drug and Cosmetic Law and other applicable laws and regulations as specified in this Complaint.

H.     An Order awarding Plaintiff her costs of suit, including reasonable attorneys' fees and pre- and post-judgment interest.

I.     An Order requiring an accounting for, and imposition of, a constructive trust upon all monies received by Lakewood as a result of the unfair, misleading, fraudulent and unlawful conduct alleged herein.

J.     Such other and further relief as may be deemed necessary or appropriate.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all causes of action or issues so triable.

DATED: March 21, 2017          Respectfully Submitted,

Michael D. Braun
**BRAUN LAW GROUP, P.C.**
1999 Avenue of the Stars, Ste. 1100
Los Angeles, California 90067
Telephone:   (310) 836-6000
Facsimile:    (310) 836-6010
Email: service@braunlawgroup.com

Stephen Gardner
Amanda Howell
**STANLEY LAW GROUP**
6116 N. Central Expressway, Suite 1500
Dallas, TX 75206
Telephone:    (214) 443-4300
Facsimile:    (214) 443-0358
Email: steve@consumerhelper.com
        ahowell@stanleylawgroup.com

Matthew J. Zevin
**STANLEY LAW GROUP**
225 Broadway, Suite 1350
San Diego, CA 92101
Telephone:    (619) 235-5306
Facsimile:    (815) 377-8419
Email:  mzevin@aol.com


Janet Lindner Spielberg
**LAW OFFICES OF JANET LINDNER
SPIELBERG**
12400 Wilshire Boulevard, #400
Los Angeles, California 90025
Telephone:    (310) 392-8801
Facsimile:    (310) 278-5938
Email:  jlspielberg@jlslp.com

*Counsel for Plaintiff*

COMPLAINT FOR DAMAGES, EQUITABLE, DECLARATORY, AND INJUNCTIVE RELIEF