Michael D. Braun (SBN 167416)
**BRAUN LAW GROUP, P.C.**
1999 Avenue of the Stars, Ste. 1100
Los Angeles, California 90067
Telephone:   (310) 836-6000
Facsimile:   (310) 836-6010
Email:   service@braunlawgroup.com

Stephen Gardner (admitted *pro hac vice*)
Amanda Howell (admitted *pro hac vice*)
**STANLEY LAW GROUP**
6116 N. Central Expressway, Suite 1500
Dallas, Texas 75206
Telephone:   (214) 443-4300
Facsimile:   (214) 443-4316
Email:   steve@consumerhelper.com
              ahowell@stanleylawgroup.com

*Attorneys for Plaintiff*
[additional counsel on signature page]

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **ESTELLE SHANE, on behalf of herself and all others similarly situated,** | **Case No.: 17-CV-2197** |
| | **CLASS ACTION** |
| **Plaintiff,** | **PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS** |
| **v.** | |
| **FLORIDA BOTTLING, INC.,** | **DEMAND FOR JURY TRIAL** |
| **Defendant.** | |

# TABLE OF CONTENTS

I.   INTRODUCTION ................................................................................1

II.  STATEMENT OF RELEVANT FACTS ...........................................3

III. LEGAL STANDARDS ........................................................................4

IV.  ARGUMENT.........................................................................................4

    A.   Plaintiff adequately pled her UCL, FAL, and CLRA claims. ...............4

        1.   Lakewood's representations are likely to mislead, and have in fact misled, reasonable consumers. ...................................4

        2.   Plaintiff satisfies Fed. R. Civ. P. 9(b). .........................................7

        3.   Use of the phrase "fresh pressed" in conjunction with a product that is pasteurized is both false and misleading, and actionable under state consumer protection laws.................9

        4.   Use of the term "cold pressed" is false and misleading...........13

    B.   Plaintiff has sufficiently alleged breach of express and implied warranties........................................................................................15

        1.   Plaintiff adequately alleges breach of the express warranty.......................................................................................15

        2.   Plaintiff adequately alleges breach of the implied warranty of merchantability. ...............................................16

    C.   Plaintiff is entitled to restitution based on quasi-contract/unjust enrichment. ......................................................................................16

    D.   Plaintiff has standing to seek prospective injunctive relief.................17

    E.   Lakewood's laches argument is premised upon an inapposite body of law. ......................................................................................19

V.   CONCLUSION...................................................................................21

# TABLE OF AUTHORITIES

**Cases**

*Abbott Laboratories v. Mead Johnson & Co.*, 971 F.2d 6 (7th Cir. 1992) ............. 12

*Ang v. Bimbo Bakeries USA, Inc.*, 2013 U.S. Dist. LEXIS 138897
    (N.D. Cal. Sep. 25, 2013) .................................................. 9

*Ashcroft v. Iqbal,* 129 S. Ct. 1937 (2009) ........................................ 4

*Astiana v. Ben & Jerry's Homemade, Inc.*, 2011 U.S. Dist. LEXIS 57348
    (N.D. Cal. May 26, 2011) ................................................. 9

*Astiana v. Hain Celestial Group, Inc.*, 783 F.3d 753 (9th Cir. 2015) .................... 16

*Avoy v. Turtle Mountain LLC,* 2014 U.S. Dist. LEXIS 19241
    (N.D. Cal. Feb. 14, 2014) ................................................. 7

*B&B Hardware, Inc. v. Hargis Indus.,* 135 S. Ct. 1293 (2015) ........................ 13, 20

*Balser v. Hain Celestial Group, Inc.*, 640 Fed. Appx. 694 (9th Cir. 2016) ...... 2, 4, 6

*Bly-Magee v. California*, 236 F.3d 1014 (9th Cir. 2001) ........................................ 8

*Briseno v. Conagra Foods, Inc.*, 2011 U.S. Dist. LEXIS 154750
    (C.D. Cal. Nov. 23, 2011) ................................................. 7

*Bronson v. Johnson & Johnson, Inc.,* 2013 WL 1629191
    (N.D. Cal. Apr. 16, 2013). ................................................ 16

*Cafasso, ex rel. United States v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047
    (9th Cir. 2011) .......................................................... 8

*Chacanaca v. Quaker Oats Co.*, 752 F. Supp. 2d 1111 (N.D. Cal. 2010) ............... 9

*Clancy v. The Bromley Tea Co.*, 2013 U.S. Dist. LEXIS 112722
    (N.D. Cal. Aug. 9, 2013) ................................................. 9

*Colgan v. Leatherman Tool Group, Inc.*, 135 Cal. App. 4th 663 (2006) ................ 5

*Delacruz v. Cytosport, Inc.*, 2012 WL 1215243 (N.D. Cal. Apr. 11, 2012) ............6

*Dioquino v. Sempris,* 2011 WL 13127143 (C.D. Cal. Dec. 8, 2011)................17, 18

*Fortyune v. American Multi–Cinema, Inc.,* 2002 WL 32985838
    (C.D. Cal. Oct. 22, 2002)................................................................17

*Fox v. Ethicon Endo-Surgery, Inc.*, 35 Cal. 4th 797 (2005)...................................19

*Freeman v. Time, Inc.*, 68 F.3d 285 (9th Cir. 1995).................................................5

*Goldemberg v. Johnson & Johnson Consumer Co*s., 317 F.R.D. 374
    (S.D.N.Y. 2016)........................................................................12

*Ham v. Hain Celestial Grp., Inc.*, 70 F. Supp. 3d 1188 (N.D. Cal. 2014) ..............15

*Henderson v. Gruma Corp.*, 2011 WL 1362188 (C.D. Cal. Apr. 11, 2011)...........17

*Hofmann v. Fifth Generation, Inc.,* 2015 U.S. Dist. LEXIS 65398
    (S.D. Cal. Mar. 18, 2015) ...............................................................12

*In re Budge Mfg. Co*., 857 F.2d 773 (Fed. Cir. 1988) .............................................11

*In re Ferrero Litig.,* 794 F. Supp. 2d 1107 (S.D. Cal. 2011) ..................................16

*In re GlenFed, Inc. Sec. Litig.*, 42 F.3d 1541 (9th Cir. 1994) ...................................7

*In re Oreck Corp. Halo Vacuum and Air Purifiers Marketing and Sales
    Practices*, 2012 WL 6062047 (C.D. Cal. Dec. 3, 2012) ............................7, 8

*Jarrow Formulas, Inc. v. Nutrition Now, Inc.,* 304 F.3d 829 (9th Cir. 2002).........19

*Johnson & Johnson v. GAC International, Inc.*, 862 F.2d 975
    (2nd Cir. 1988) .............................................................................12

*Kearns v. Ford Motor Co*., 567 F.3d 1120 (9th Cir. 2009) .......................................7

*Khasin v. Hershey Co*., 2012 U.S. Dist. LEXIS 161300
    (N.D. Cal. Nov. 9, 2012) ..................................................................9

*Kosta v. Del Monte Corp*., 2013 U.S. Dist. LEXIS 69319
    (N.D. Cal. May 15, 2013).................................................................9

*Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310 (2011) ........................................ 2

*Larsen v. Trader Joe's Co.*, 2012 WL 5458396 (N.D. Cal. June 14, 2012) ........... 17

*Lopez v. Smith*, 203 F.3d 1122  (9th Cir.2000) ......................................................... 4

*Magic Kitchen LLC v. Good Things Internat., Ltd.,*
  153 Cal. App. 4th 1144 (2007) ........................................................................ 20

*Miller v. Glenn Miller Prods.., 454 F.3d 975 (9th Cir. 2006)* .............................. 20

*Mohamed v. Jeppesen Dataplan, Inc.*, 579 F.3d 943 (9th Cir. 2009) ...................... 4

*Nguyen v. W. Digital Corp.*, 229 Cal. App. 4th 1522 (2014) ................................ 19

*Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer*
  *Pharms.* Co., 290 F.3d 578 (3d Cir. 2002) ...................................................... 11

*Pernod Ricard USA v. Bacardi*, 653 F.3d 241 (3d Cir. 2011) ........................... 7, 12

*Peviani v. Natural Balance, Inc.*, 774 F. Supp. 2d 1066 (S.D. Cal. 2011) ............... 5

*POM Wonderful LLC v. Coca-Cola Co.*, 134 S. Ct. 2228 (2014) .......................... 11

*Pom Wonderful LLC v. Ocean Spray Cranberries, Inc.*,
  642 F. Supp. 2d 1112 (C.D. Cal. 2009) ............................................................. 9

*Pooshs v. Phillip Morris, USA, Inc.*, 51 Cal.4th 788 (2011) ................................. 19

*Ries v. AriZona Beverages USA LLC*, 287 F.R.D. 523 (N.D. Cal. 2012) ......... 17, 18

*Roth v. Garcia Marquez*, 942 F.2d 617 (9th Cir. 1991). ........................................ 4

*Siracusano v. Matrixx Initiatives, Inc.*, 585 F.3d 1167 (9th Cir. 2009) ................... 4

*Stickrath v. Globalstar, Inc.*, 527 F. Supp. 2d 992 (N.D. Cal. 2007) ...................... 5

*Trazo v. Nestle USA, Inc.*, 2015 WL 4196973 (N.D. Cal. July 10, 2015)............... 16

*United States v. Redwood City*, 640 F.2d 963 (9th Cir. 1981) ................................. 4

*Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097 (9th Cir. 2003)................................7

*Vicuna v. Alexia Foods, Inc.*,2012 WL 1497507 (N.D. Cal. Apr. 27, 2012) ..........15

*Viggiano v. Hansen*, 944 F. Supp. 2d 877 (C.D. Cal. 2013) ....................................6

*Warner Lambert Co. v. BreathAsure, Inc.*, 204 F.3d 87 (3rd Cir. 2000) ...............11

*Weinstat v. Dentsply Int'l, Inc.*, 180 Cal. App. 4th 1213 (2010)............................15

*Werbel ex rel. v. Pepsico*, Inc., 2010 WL 267380 (N.D. Cal. 2010)........................6

*Westways World Travel v. AMR Corp.*, 182 F. Supp. 2d 952
    (C.D. Cal. 2001) ...............................................................................................4

*Williams v. Gerber Prods. Co.*, 552 F.3d 934 (9th Cir. 2008) .........................2, 4, 5

*Worden v. Cal. Fig Syrup Co.*, 187 U.S. 516 (1903)...............................................11

*Yeksigian v. Nappi*, 900 F.2d 101 (7th Cir. 1990) ....................................................4

*Yumul v. Smart Balance, Inc.*, 733 F. Supp. 2d 1117 (C.D. Cal. 2010) ...................6

*Zobmondo Entm't, LLC v. Falls Media, LLC,* 602 F.3d 1108 (9th Cir. 2010) .......13

**Statutes**#

15 U.S.C. § 1125(a) ...................................................................................11

15 U.S.C. 1052 (a) ....................................................................................11

21 CFR 101.95 .......................................................................................3, 9

Cal. Bus. & Prof. Code §17200 ................................................................5

Cal. Bus. & Prof. Code §17500 ................................................................5

Cal. Civ. Code §1770 .................................................................................5

Cal. Com. Code § 2315(2)(c),(f) .............................................................16

U.C.C. § 2-313 cmt. 5 ..............................................................................15

UCC com., 23A pt. 1 ................................................................................15

**Other Authorities**#

FTC Policy Statement on Deception, 103 F.T.C. 110, 174 (1984) ..........................6

**Rules**#

Fed. R. Civ. P. 9(b) ...............................................................................7, 9

Plaintiff Estelle Shane ("Plaintiff") respectfully submits the following memorandum in opposition to the Motion to Dismiss ("Motion") (Dkt. No. 24) filed by Defendant Florida Bottling, Inc. ("Defendant" or "Lakewood"). For the reasons stated below, Lakewood's Motion must be denied.

## I. INTRODUCTION

Lakewood is a juice manufacturer operating in a highly competitive and evolving market. Over the past several years, the most significant driver in the juice industry has been consumer demand for more healthful, fresh, and minimally processed juices. ¶ 4.[1] The hallmark of such juices is that they are not subject to thermal processing (*i.e.*, pasteurization) which destroys the nutrients and living enzymes in fresh juice. ¶ 6. Seeking to take advantage of this demand, Lakewood prominently claims that its juices are both "fresh pressed" and "cold pressed." In truth, Lakewood's juices are pasteurized—rendering their claims of being cold pressed and fresh pressed false and misleading. ¶¶ 3-8.

Lakewood argues that the Court should dismiss Plaintiff's case because she was foolish enough to see labels like the ones below and believe that the Juices were actually "fresh pressed" or "cold pressed." Lakewood asserts that consumers should comb through the fine print on the back of its juice labels to find information that belies the truth of what is represented on the front.[2]

---

[1] All "¶" references are to the Complaint for Damages, Equitable and Injunctive Relief. Dkt. No. 1 ("Complaint") unless otherwise noted.

[2] Lakewood contradicts the representations that its juices are "cold pressed" and "fresh pressed," made on the front of its labels by representing on the back in mouse-type print that the juices are pasteurized (i.e. subject to extreme heat).  Mouse type is "small-sized type, usually smaller than 7-point." http://www.dictionary.com/browse/mouse-type. This is half the size of the 14-point font required by the Court: This is half the size of the 14-point font required by the Court. Written disclosures or fine print may be insufficient to correct a misleading representation. FTC Policy Statement on Deception, 103 F.T.C. 110, 174 (1984) *available at* https://www.ftc.gov/system/files/documents/public_statements/410531/831014deceptionstmt.pdf.





Fortunately, the Ninth Circuit disagrees. Indeed, it is black letter law of this Circuit that reasonable consumers should be able to trust front-of-package representations, and are not "expected to look beyond misleading representations on the front of the box" to discover the truth from small print found elsewhere on a product. *Williams v. Gerber*, 552 F.3d 934, 939 (9th Cir. 2008); *Balser v. Hain Celestial Group, Inc.*, 640 Fed. Appx. 694 (9th Cir. 2016).

"The marketing industry is based on the premise that labels matter, that consumers will choose one product over another similar product based on its label." *Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 328 (2011). Lakewood has chosen to represent that its Juices are "fresh pressed" and "cold pressed" despite being pasteurized, in an effort to convince the consuming public that they are different from the myriad of other pasteurized juices. They are not. Lakewood's descriptions of its

Juices are deceptive, in contravention of state consumer laws, and violate Lakewood's obligations under its express and implied warranties. For these, and the reasons discussed more fully below, Lakewood's Motion should be denied in its entirety.

## II.   STATEMENT OF RELEVANT FACTS

Lakewood sells premium fruit juices. These Juices claim to be organic and to contain 100% juice. The marketing and labeling for the Juices are dominated by photo-realistic depictions of the named fruits and vegetables, and Lakewood emphasizes that the Juices contain "no additives or artificial ingredients of any kind." ¶ 2. Lakewood clearly tries to tout the healthfulness of its Juices—and its entire marketing and labeling campaign is designed to capture the dollars of health-and nutrition-conscious consumers.

On every one of its Juices, relevant to Plaintiff's Complaint, Lakewood places multiple claims that the Juices are "fresh pressed" and "cold pressed."

Use of the term "fresh" is regulated by 21 CFR 101.95(a), which states that "the term "fresh," when used on the label or in labeling of a food in a manner that suggests or implies that the food is unprocessed, means that the food is in its raw state and has not been frozen or subjected to any form of thermal processing or any other form of preservation.

The term "cold pressed" refers to a non-thermal processing method that uses high pressure instead of heat to kill bacteria ¶ 6.

Despite boldly representing to consumers that its juices are "fresh pressed" and "cold pressed," the truth is that Lakewood's juices are pasteurized (*i.e.*, subject to intense heat), rendering these claims false and misleading.

## III.   LEGAL STANDARDS

Under Rule 12(b)(6), dismissal is proper only in "extraordinary" cases. *United States v. Redwood City*, 640 F.2d 963, 966 (9th Cir. 1981). *See Williams*, 552 F.3d at 939. On a motion to dismiss, the court must "accept the plaintiffs' allegations as true and construe them in the light most favorable to the plaintiffs." *Siracusano v. Matrixx Initiatives, Inc.*, 585 F.3d 1167, 1177 (9th Cir. 2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the alleged misconduct." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009); s*ee also Mohamed v. Jeppesen Dataplan, Inc.*, 579 F.3d 943, 949 (9th Cir. 2009). Furthermore, "defendants have the burden on a motion to dismiss to establish the legal insufficiency of the complaint." *Yeksigian v. Nappi*, 900 F.2d 101, 104 (7th Cir. 1990); *Westways World Travel v. AMR Corp.*, 182 F. Supp. 2d 952, 955 (C.D. Cal. 2001) (same). As demonstrated below, Lakewood has not met its burden.[3]

## IV.   ARGUMENT

### A. Plaintiff adequately pled her UCL, FAL, and CLRA claims.

#### 1.   Lakewood's representations are likely to mislead, and have in fact misled, reasonable consumers.

Lakewood faces a heavy burden in making the argument that reasonable consumers are not likely to be misled by its practices. Whether a business practice is deceptive is generally a question of fact not amenable to determination on a motion to dismiss. *Williams*, 552 F.3d at 938; *Balser*, 640 F. Appx. at 696 ("the likely impact . . .

---

[3] To the extent the Court finds any part of Defendant's motion persuasive, Plaintiff respectfully asks for leave to amend. Federal Rule of Civil Procedure 15(a) gives district courts discretion to allow parties to amend pleadings when justice so requires. The Ninth Circuit liberally applies Rule 15's policy of favoring the amendment of pleadings. *Roth v. Garcia Marquez*, 942 F.2d 617, 628 (9th Cir. 1991). Moreover, leave to amend should be granted unless the district court determines that the pleading could not possibly be cured by the allegation of other facts. *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir.2000).

on a reasonable consumer is a factual issue, not determinable on the pleadings.");
*Stickrath v. Globalstar, Inc.*, 527 F. Supp. 2d 992, 998 (N.D. Cal. 2007).

Under the UCL, FAL, and CLRA, a "reasonable consumer" standard applies when determining whether a statement is misleading or deceptive. *Freeman v. Time, Inc.*, 68 F.3d 285, 289 (9th Cir. 1995); *Colgan v. Leatherman Tool Group, Inc.*, 135 Cal. App. 4th 663, 38 Cal. Rptr. 3d 36, 48 (2006). Under the reasonable consumer standard, a plaintiff must show that members of the public are likely to be deceived. *Williams,* 552 F.3d at 938 (internal quotation marks omitted). A reasonable consumer is any "consumer acting reasonably under the circumstances," who "is not versed in the art of inspecting and judging a product…." *Peviani v. Natural Balance, Inc.*, 774 F. Supp. 2d 1066, 1070 (S.D. Cal. 2011); Cal. Bus. & Prof. Code §17200; *id.* §17500; Cal. Civ. Code §1770; *Colgan,* 38 Cal. Rptr. 3d 36, 48 (2006) (internal citations omitted). The Ninth Circuit has acknowledged that "these laws prohibit 'not only advertising which is false, but also advertising [,] which although true, is either actually misleading, or which has a capacity, likelihood or tendency to deceive or confuse the public.'"[4]

Using the "reasonable consumer" test, it is a "rare situation in which granting a motion to dismiss is appropriate." *Williams*, 552 F.3d at 939. This case is far from that "rare" situation. A reasonable consumer seeing a product with "fresh pressed" and "cold pressed" claims emblazoned on the front label would certainly be misled into thinking the product was actually "fresh pressed" and "cold pressed," and not subject to extreme heat (i.e. pasteurized). *See, e.g.,* ¶¶ 1–4.

Moreover, the Ninth Circuit has held that reasonable consumers should not be expected to look beyond misleading representations on the front of the box to discover the truth in small print found hidden somewhere else on a product. *Williams*, 552 F.3d at 939-40. *See also Yumul v. Smart Balance, Inc.*, 733 F. Supp. 2d 1117, 1129 (C.D. Cal. 2010) (ruling that "where product packaging contains an affirmative

---

[4] *Williams v. Gerber*, 552 F. 3d 934, 938 (9th Cir. 2008).

misrepresentation, the manufacturer cannot rely on the small-print nutritional label to contradict and cure that misrepresentation." ); *Delacruz v. Cytosport, Inc*., 2012 WL 1215243, at *6 (N.D. Cal. Apr. 11, 2012).

Despite this, Lakewood asks the Court to ignore its front-of-package misrepresentations because the term "pasteurized" is placed in an obscure location and in small print on the back. Motion at 11. But, as the Ninth Circuit has clarified, the onus is *not* on consumers to investigate all aspects of a product's label to check for contradictory messages hidden on the back in the fine print. Hidden disclosures cannot cure front-of-package deception, and Lakewood's fine print does not absolve it of its deceptions here. The FTC agrees: "Written disclosures or fine print may be insufficient to correct a misleading representation." FTC Policy Statement on Deception, 103 F.T.C. 110, 174 (1984).

In a vain attempt to avoid the Ninth Circuit's holding in *Gerber*, Lakewood cites cases that are in the minority and that pre-date the Ninth Circuit's re-affirmation of *Gerber* in *Balser*, 640 F. Appx. at 696. Lakewood attempts to liken the marketing and labeling of its organic, 100% juice Products, with that of sugary cereals making fruit claims and soda making "natural" claims. These comparisons are to no avail. This case is distinguishable from the cases that Lakewood relies on—where the courts found that it was not possible for *any* reasonable consumer to think the products were misleading. *See Werbel ex rel. v. Pepsico*, Inc. 2010 WL 267380, at *4 (N.D. Cal. 2010) (finding that no reasonable consumer would think Cap'n Crunch had nutritional value derived from fruit where there were no pictures or images of fruit in the labeling, nor were there any representations in the marketing or labeling that the product was made with real fruit or was nutritious); *Viggiano v. Hansen*, 944 F. Supp. 2d 877, n.38 (C.D. Cal. 2013) (finding claims on diet soda's labeling were preempted and that "where a product's front label is accurate and consistent [with its other labeling] . . . no reasonable consumer could be misled by the label"); *Pernod Ricard USA v. Bacardi*, 653 F.3d 241 (3d Cir. 2011) (finding that rum that specifically said "Puerto Rican Rum" and "distilled

and crafted in Puerto Rico" could not deceive reasonable consumers into believing it was from Cuba); *Avoy v. Turtle Mountain LLC* 2014 U.S. Dist. LEXIS 19241 (N.D. Cal. Feb. 14, 2014) (dismissing claims about line of frozen desserts due to lack of reliance, dicta indicating reasonable consumers would not think frozen desserts were sugar-free). That is not the case here.

Plaintiff has alleged more than enough facts to show that reasonable consumers are likely to be misled. Further examination of whether Lakewood's practices misled reasonable consumers is a question of fact that requires consideration and weighing of evidence from both sides, which is inappropriate this stage.

## 2.  Plaintiff satisfies Fed. R. Civ. P. 9(b).

Plaintiff has sufficiently specified the requisite details of the misconduct alleged. *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009), *citing Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003). Lakewood contends that Plaintiff's false advertising claims do not satisfy the heightened pleading standards of Fed. R. Civ. P. 9(b) because Plaintiff does not allege the "timing, location and frequency" of her purchases. Motion at 6. Lakewood's argument is specious at best.

The purpose of Rule 9(b) is to give defendants sufficient notice of the alleged fraudulent conduct so that defendants can adequately defend against the allegations. *Kearns*, 567 F.3d at 1124. Rule 9(b) requires a plaintiff to "ple[a]d with particularity," among other things, "which [statements] he relied upon in making his decision." *Briseno v. Conagra Foods, Inc.*, 2011 U.S. Dist. LEXIS 154750, at 34-35 (C.D. Cal. Nov. 23, 2011)(quoting *Kearns*, 567 F.3d at 1126; *see also In re GlenFed, Inc. Sec. Litig.*, 42 F.3d 1541, 1548 (9th Cir. 1994). But plaintiffs are not required "to recall and specify precisely which of the many advertisements they [had seen and which] were the particular advertisements they relied upon" and it would be "unfair" to require a plaintiff to do so. *In re Oreck Corp. Halo Vacuum and Air Purifiers Marketing and Sales Practices*, 2012 WL 6062047, at *15 (C.D. Cal. Dec. 3, 2012). In addition, under Rule 9(b), so long as plaintiffs "identify[] a clear common message in the advertising

campaign and identify[] numerous examples that repeat this message, Plaintiffs have adequately notified defendants of the 'who, what, when, where and how of the misconduct charged.'" *In re Oreck*, 2012 WL 6062047, at *15 (quoting *Cafasso, ex rel. United States v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1055 (9th Cir. 2011)). The complaint need only be specific enough to give defendants notice of the particular misconduct. *Bly-Magee v. California*, 236 F.3d 1014, 1019 (9th Cir. 2001).

In her Complaint, Plaintiff alleges that she relied on Lakewood's "fresh pressed" and "cold pressed" representations when she purchased the Juices. ¶¶ 11, 59, 88. She lists the flavors of Juices she bought (even though all Juices bear the exact representations). Plaintiff states: "who" is the defendant—Lakewood (*e.g.*, ¶ 12); the "what" are Lakewood's unlawful and deceptive claims on its labeling (¶¶ 1–28 );[5] the "when" is the defined Class Period (¶42) as limited by the statute of limitations associated with each cause of action; and the "where" is Lakewood's product labels (*e.g.*, ¶¶ 8, 17). With respect to "how" Lakewood statements were misleading, Plaintiff alleges that: (1) Lakewood violated the Food, Drug and Cosmetics Act ("FDCA") regulations giving rise to the causes of action presented in the Complaint (*e.g.*, ¶ 66); (2) Plaintiff was deceived by Lakewood's Juice labels (*e.g.*, ¶ 11); (3) Plaintiff purchased Juices while reasonably relying on Lakewood's misrepresentations (*e.g.*, ¶ 11); and (4) Plaintiff was injured because she would not have purchased these products had they not been misleadingly mislabeled (¶ 11). Plaintiff has met the 9(b) standard. Accordingly, Lakewood's argument that it has no notice of the particular misconduct is disingenuous.

Many courts have found similar food misbranding and mislabeling cases sufficient to withstand scrutiny under Rule 9(b). *See, e.g.*, *Clancy v. The Bromley Tea*

---

[5] Lakewood argues that it sells multiple pomegranate juices and that Plaintiff must specifically identify which one she purchased. This argument, however, is nothing more than a red-herring. The common thread between all the juices in the class are those that bear the same offending terminology "cold pressed" and "fresh pressed" despite the fact the juice is pasteurized. (¶11).

*Co.*, 2013 U.S. Dist. LEXIS 112722 *10-11 (N.D. Cal. Aug. 9, 2013) (Rule 9(b) satisfied where plaintiff named the company, the discrete claims on labeling of products and defendant's website, the class period, and that there was reasonable reliance on the claims); *Kosta v. Del Monte Corp.*, 2013 U.S. Dist. LEXIS 69319 *14-15 (N.D. Cal. May 15, 2013) (same, with respect to claims made about fruit and vegetable products); *Khasin v. Hershey Co.*, 2012 U.S. Dist. LEXIS 161300 *8 (N.D. Cal. Nov. 9, 2012) (same, with respect to claims made on defendant's labels); *Astiana v. Ben & Jerry's Homemade, Inc.*, 2011 U.S. Dist. LEXIS 57348 *5-6 (N.D. Cal. May 26, 2011) (same, as to claims on different brands of ice cream); *Chacanaca v. Quaker Oats Co.*, 752 F. Supp. 2d 1111, 1126 (N.D. Cal. 2010) (Rule 9(b) met where complaint identified "the particular statements they allege are misleading, the basis for that contention, where those statements appear on the product packaging, and the relevant time period in which the statements were used"); *Pom Wonderful LLC v. Ocean Spray Cranberries, Inc.*, 642 F. Supp. 2d 1112, 1124 (C.D. Cal. 2009) (9(b) met where plaintiff pled the location of the purportedly misleading title "Cranberry and Pomegranate," by stating that "the title was used on the label of Defendant's product"); *Ang v. Bimbo Bakeries USA, Inc.*, 2013 U.S. Dist. LEXIS 138897, at *5 (N.D. Cal. Sep. 25, 2013).

### 3. Use of the phrase "fresh pressed" in conjunction with a product that is pasteurized is both false and misleading, and actionable under state consumer protection laws.

Lakewood argues use of the term "fresh pressed" is not false and misleading because: (1) the FDCA allows use of the term fresh when it does not suggest or imply the food is unprocessed, and (2) the fact that Lakewood has received a trademark on the phrase "fresh pressed" means it cannot violate the FDCA, nor the consumer laws pled herein. As detailed below, these arguments fail as a matter of law and logic.

21 CFR 101.95 is clear. The term "fresh," when used on the label or labeling of a food in a manner that suggests or implies that the food is unprocessed, means that the food is in its raw state and has not been frozen or subjected to any form of thermal

processing or any other form of preservation. As Plaintiff alleges in the Complaint, since Lakewood pasteurizes (*i.e.*, thermally processes) its Juices, use of the term "fresh pressed" is misleading.

Lakewood seeks to avail itself of the exception to 21 CFR 101.95, which exempts products using the term "fresh" when doing so does not suggest or imply the food is unprocessed, by arguing that "fresh pressed," is a "method of processing food, rather than the food itself." Motion at 7. This contrived distinction is not only illogical on its face, but is a distinction entirely unsupported by a plain reading of 21 CFR 101.95. Moreover, it has been expressly rejected by the FDA in the very example highlighted by Lakewood. Motion at 7 n.1. As explained by the FDA, "the term "fresh" to describe pasta sauce that **has been pasteurized or that contains pasteurized ingredients** would be subject to paragraph (a) of this section because the term implies that the food is not processed or preserved." (emphasis added) 21 CFR 101.95. The FDA has made clear that use of the term fresh on products that have been thermally processed is illegal regardless of whether the product as a whole as was thermally processed or just a component part. Reemphasizing that point in a public letter, the FDA warned a manufacturer of cherry juice that its claim that the product was "always fresh from the farm to the bottle," was false and misleading in violation of 21 CFR 101.95 because it had been "flash-pasteurized." ¶ 37

http://www.fda.gov/iceci/enforcementactions/warningletters/2012/ucm307676.htm.[6]

---

[6] Lakewood also tries to improperly equate "fresh pressed" with "frozen fresh" and "fresh frozen." These terms, however, are separately defined under §101.95(b) and specifically relate to foods that have been subjected to freezing while fresh, which Lakewood products are not, nor claim to be. Use of these terms are further limited to products that have not been subject to thermal processing but rather have been "quickly frozen" to ensure "virtually no deterioration has taken place." *Id.*

Lakewood's second argument, that the fact it has received a trademark on the phrase "fresh pressed" immunizes it from violations of the FDCA and state consumer protection statutes, is equally unavailing.

It is axiomatic that a trademark can be deceptive or deceptively used to mislead consumers. "A trademark is "deceptive" as applied to particular goods if (1) it misdescribes the character, quality, function, composition or use of the goods, (2) prospective purchasers are likely to believe that the misdescription actually describes the goods, and (3) the misdescription is likely to affect the decision to purchase the goods." *In re Budge Mfg. Co.*, 857 F.2d 773, 775 (Fed. Cir. 1988); 15 U.S.C. 1052(a).[7] Indeed, trademarks must abide by the same general laws against false and misleading advertising as traditional advertisements and to that end, have been challenged as false or misleading in a number of scenarios including by competitors under Section 43(a) of the Lanham Act. 15 U.S.C. § 1125(a).[8] *See, e.g.*, *Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharms.* Co., 290 F.3d 578, 583 (3d Cir. 2002) (affirmed the grant of a preliminary injunction against the mark "Mylanta Night Time Strength" on the basis that the mark necessarily implied a false message that the over-the-counter heartburn product was specially formulated for nighttime relief, or that the product provided all-night relief.); *Warner Lambert Co. v. BreathAsure, Inc.*, 204 F.3d 87 (3rd Cir. 2000) (affirming the grant of a permanent injunction against the mark

---

[7] *Worden v. Cal. Fig Syrup Co.*, 187 U.S. 516, 528 (1903) ("when the owner of a trade mark applies for an injunction to restrain the defendant from injuring his property by making false representations to the public, it is essential that the plaintiff should not in his trade mark, or in his advertisements and business, be himself guilty of any false or misleading representation; that if the plaintiff makes any material false statement in connection with the property which he seeks to protect, he loses his right to claim the assistance of a court of equity; that where any symbol or label claimed as a trade mark is so constructed or worded as to make or contain a distinct assertion which is false, no property can be claimed on it, or, in other words, the right to the exclusive use of it cannot be maintained").

[8] Similar to the UCL and CLRA, the Lanham Act creates a cause of action for unfair competition resulting from misleading advertising or labeling. Although the cause of action is reserved for competitors, "in the end consumers also benefit from the Act's proper enforcement." *POM Wonderful LLC v. Coca-Cola Co.*, 134 S. Ct. 2228, 2234 (2014).

---

"BreathAsure," holding that the product name deceptively assured its users that they would have fresh breath after using the product, despite the lack of scientific substantiation to support that assurance); *Johnson & Johnson v. GAC International, Inc.*, 862 F.2d 975 (2nd Cir. 1988) (holding that the mark "Polysaphire" was facially false as a product name for a polycrystalline aluminum oxide orthodontic bracket); *Abbott Laboratories v. Mead Johnson & Co.*, 971 F.2d 6 (7th Cir. 1992) (holding that the mark "Ricelyte" for an oral electrolyte maintenance solution was literally false where the product did not contain powdered whole rice).[9]

Trademarks have also been successfully challenged in the same context as the case at bar—consumer class actions brought under state consumer protection laws for false and misleading labeling. *See, e.g.*, *Hofmann v. Fifth Generation, Inc.*, 2015 U.S. Dist. LEXIS 65398 (S.D. Cal. Mar. 18, 2015) (motion to dismissed granted in part and denied in part upholding claim that defendant's trademark, "Tito's Handmade Vodka" was deceptive because the vodka is not made by hand but rather through a mechanized process). In *Goldemberg v. Johnson & Johnson Consumer C*os., 317 F.R.D. 374, 387-88 (S.D.N.Y. 2016), the court considered whether the "Active Naturals" trademark could be false and misleading under state consumer protection laws. In answering that question affirmatively, the court not only denied the defendant's motion to dismiss, but ultimately certified a class which included a California class of consumers asserting UCL and CLRA claims, the same as those asserted here. The *Goldenmberg* court explained, "[p]laintiffs assert that all consumers were subjected to the same deceptive actions—the labeling of Aveeno products with the Active Naturals trademark…. Here, the Named Plaintiffs all claim to have been misled by the Active Naturals marketing to believe the products were more natural than not—which is not what Defendant argues

---

[9] The fact that the PTO issued a mark does not mean the mark is not misleading in its application. A mark can be registrable and still constitute false advertising once it is actually put to use. *See e.g.*, *Pernod Ricard USA, LLC v. Bacardi U.S.A., Inc.*, 653 F.3d 241, 250-56 (3d Cir. 2011) (In contrast to trademark deceptiveness analysis, false advertising can consider context).

the trademark is supposed to mean. While not in exact agreement, all of the Plaintiffs allege they were deceived to a certain degree . . .. Therefore, the Court adopts the premise that the common question . . . is "whether it is deceptive to label the [p]roducts with the . . . trademark 'Active Naturals'" because such labeling of the products (and the marketing scheme surrounding that label) would deceive a consumer." *Id.*

Thus, Lakewood's use of its trademark can be tested under state consumer protection statues.[10]

### 4. Use of the term "cold pressed" is false and misleading.

Lakewood contends that Plaintiff has provided two definitions of cold pressed which it claims are inherently contradictory. Lakewood also contends that the details in the Complaint belie Plaintiff's knowledge of the difference between juice extraction and juice sterilization which "effectively pleads her out of a claim." Motion at 10. Although relatively unintelligible, the argument Lakewood seems to be making is that "cold pressed" refers to the extraction of juice and not the subsequent method of sterilization, therefore, there is nothing misleading about the claim.

If there has ever been a good example of misdirection, Lakewood's argument would be it. A plain and fair reading of Plaintiff's Complaint demonstrates that there is nothing contradictory about her allegations, nor any admission that pleads her out of her claim.

---

[10] Lakewood's reliance on *B&B Hardware, Inc. v. Hargis Indus.,* 135 S. Ct. 1293 (2015) and *Zobmondo Entm't, LLC v. Falls Media, LLC,* 602 F.3d 1108 (9th Cir. 2010) is misplaced as their holdings are inapposite to the case at bar. These cases stand for the proposition that a registered trademark is presumptively protectible—a question that is not at issue in the case at bar. More importantly, neither case substantively involves a question of false advertising and consumer deception. Critically, however, the Supreme Court in *B&B Hardware, Inc. v. Hargis Indus.* acknowledges that despite the existence of a trademark other causes of action may lie. 135 S. Ct. 1293, 1301 (2015) ("The Lanham Act, of course, also creates a federal cause of action for trademark infringement….. [wherein] [t]he court must decide whether the defendant's use of a mark in commerce "is likely to cause confusion, or to cause mistake, or to deceive" with regards to the plaintiff's mark).

---

Plaintiff alleges that "Cold Pressed, usually refers to the technique by which fruits or vegetables are squeezed or pressed in a machine to extract the juice from them. Once the fruits and veggies are pressed, their contents are bottled and then subjected to Cold Pressure Technology." ¶23. In the very next sentence Plaintiff explains that, "[i]n contrast to pasteurized juices, cold pressed juices are processed with a technology, called High Pressure Processing, that uses high pressure instead of heat thereby maintain[ing] most of the juice's nutrients and living enzymes, which otherwise get destroyed by heat." *Id.* The next several paragraphs go on to provide a more detailed explanation of High Pressure Processing as a non-thermal method of sterilization used in making cold pressed juices. Finally, the Complaint concludes with the allegation that Lakewood juices are not processed by non-thermal high pressure processing, but rather are pasteurized. In short, they are sterilized by heat, not pressure, making use of the term "cold pressed" false and misleading.

The crux of Lakewood's argument seems to be one of semantics and the fact there is a period between the first two sentences in paragraph 23. Notwithstanding the fact that a fair reading of the quote as a whole clearly indicates the sentences are to be read in the conjunctive, the next several paragraphs serve to reinforce that point. There is simply no contradiction in how Plaintiff has defined the term "cold pressed" as a non-thermal method of sterilization. ¶¶ 6, 23-28.[11]

---

[11] Lakewood argues that the allegations of the Complaint reveal that Plaintiff understands the difference between juice extraction and juice sterilization and that such an understanding somehow pleads her out of her claim. As a preliminary matter, the difference between juice extraction and juice sterilization is inapposite to Plaintiff's allegation that the term "cold pressed" refers to "a non-thermal processing method that uses high pressure to kill bacteria rather than heat thereby maintaining most of the juice's nutrients and living enzymes, which otherwise get destroyed by heat." ¶ 6. Second, as detailed above, the Complaint consistently defines "cold pressed" as a descriptor for a product that has been processed with high pressure processing— a non-thermal method. Third, what Plaintiff knew at the time of her purchases and what she knows after filing her complaint may not be co-extensive, and is certainly not something Lakewood can opine on at this stage of the litigation. At this juncture, Plaintiff has represented that at the time of purchase, "[s]he did not know that the Juice was, in fact, pasteurized and therefore neither cold pressed nor fresh pressed." ¶11. *Siracusano v. Matrixx Initiatives, Inc.*, 585 F.3d 1167, 1177 (9th Cir. 2009) (On a motion to dismiss, the court must "accept the plaintiffs' allegations as true and construe them in the light most favorable to the plaintiffs.").

### B. Plaintiff has sufficiently alleged breach of express and implied warranties.

#### 1. Plaintiff adequately alleges breach of the express warranty.

To state a breach of express warranty claim, a plaintiff must allege facts sufficient to show that (1) the seller's statements constitute an affirmation of fact or promise or a description of the goods, (2) the statement was part of the basis of the bargain, and (3) the warranty was breached. *Ham v. Hain Celestial Grp., Inc.*, 70 F. Supp. 3d 1188, 1195 (N.D. Cal. 2014). Plaintiff has done so.

Plaintiff specifically alleges that Lakewood makes express representations on its labels that its Juices are "fresh pressed" and "cold pressed" when in fact they are not. And case law is clear that a label can create an actionable express warranty. For example, an "all natural" label on potatoes was an express warranty that they did not contain an allegedly synthetic leavening agent. *See, e.g., Vicuna v. Alexia Foods, Inc.*, 2012 WL 1497507, at *2 (N.D. Cal. Apr. 27, 2012). An "all natural & organic" statement on the label of a cosmetic product was an express warranty that it was so. *See* U.C.C. § 2-313 cmt. 5.

Finally, Plaintiff more than adequately alleges that the challenged representations were part of the basis of the bargain for her. ¶ 11. Plaintiff relied on Lakewood's packaging and marketing and believed that the Juices were "fresh pressed" and "cold pressed." *Id.* And these statements were a part of the basis of the bargain. Any affirmation, once made, is part of the agreement unless there is "clear affirmative proof" that the affirmation has been taken out of the agreement. *Weinstat v. Dentsply Int'l, Inc.*, 180 Cal. App. 4th 1213, 1229, 103 Cal. Rptr. 3d 614, 627 (2010); *Brown* 913 F. Supp. 2d at 900 (accord); UCC com., 23A pt. 1, West's Ann. Cal. U. Com. Code, *supra,* foll. § 2313, com. 3, p. 296). The allegations in Plaintiff's Complaint more than meet this

standard. Moreover, according to the FTC and the Ninth Circuit, hidden disclosures cannot correct deception elsewhere on a label. See, Section A.1., *supra*.

## 2.  Plaintiff adequately alleges breach of the implied warranty of merchantability.

Under California law, merchantability has multiple meanings, one of which is: "the product must '[conform] to the promises or affirmations of fact made on the container or label.'" *In re Ferrero Litig.,* 794 F. Supp. 2d 1107, 1118 (S.D. Cal. 2011), quoting *Hauter v. Zogarts,* 14 Cal. 3d 104, 118, 120 Cal. Rptr. 681, 534 P.2d 377 (1975) (citing Cal. Com. Code § 2315(2)(c), (f)); *Bronson v. Johnson & Johnson, Inc.,* 2013 WL 1629191 at *12 (N.D. Cal. Apr. 16, 2013). Here, Plaintiff did not receive the goods that she bargained for, and Lakewood's Juices failed to conform to the promises or affirmations of fact made in its promotions, marketing, advertising, packaging and labels (for all of the reasons discussed in Section A1, A3, and A4, *supra*). These allegations have been found to state a claim for breach of warranty of merchantability under the definition cited above. *See Bronson*, 2013 WL 1629191, at *12 (refusing to dismiss warranty of merchantability claims based on second definition in case involving food products) *In re Ferrero Litig.,* 794 F. Supp. 2d at 1118 (refusing to dismiss similar claims of non-conformance with affirmations made on label, against Nutella).

## C. Plaintiff is entitled to restitution based on quasi-contract/unjust enrichment.

Lakewood argues that Plaintiff's claim for unjust enrichment must be dismissed because it is duplicative of her other claims. Yet Lakewood cites only cases that pre-date *Astiana v. Hain Celestial Group, Inc.*, 783 F.3d 753 (9th Cir. 2015). In *Astiana*, a case involving the false labeling of cosmetics, the Ninth Circuit held that when a plaintiff alleges unjust enrichment, "a court may construe the cause of action as a quasi-contract claim seeking restitution." *See also Trazo v. Nestle USA, Inc.*, 2015 WL 4196973, at *2 (N.D. Cal. July 10, 2015). Plaintiff alleges that Lakewood was enriched, *i.e.*, received a benefit, by means of deceptive and misleading labeling, advertising,

marketing and sales of the Juices. Plaintiff seeks restitution. She has alleged the elements of the claim. Lakewood's argument that Plaintiff's claims are duplicative and unnecessary is wholly unsupported, and is in any case not a basis to dismiss Plaintiff's claim.

### D. Plaintiff has standing to seek prospective injunctive relief.

According to Lakewood, because Plaintiff is now aware of its misleading and deceptive practices, she lacks standing to pursue declaratory and injunctive relief. Motion at 16-17. This argument has been rejected by this Court and other California courts. If a consumer's mere recognition of alleged deception defeated standing, then injunctive relief would *never* be available in false advertising cases—"a wholly absurd" result. *Ries v. AriZona Beverages USA LLC*, 287 F.R.D. 523, 533 (N.D. Cal. 2012); *Henderson v. Gruma Corp.*, 2011 WL 1362188, at *7-8 (C.D. Cal. Apr. 11, 2011); *Dioquino v. Sempris*, 2011 WL 13127143 (C.D. Cal. Dec. 8, 2011). By outright rejecting this logically fallacious argument, courts have refused to "eviscerate the intent of the . . . legislature in creating consumer protection statutes." *Larsen v. Trader Joe's Co.*, 2012 WL 5458396, at *4 (N.D. Cal. June 14, 2012); *Henderson*, 2011 WL 1362188, at *7-8; *Fortyune v. American Multi–Cinema, Inc.*, 2002 WL 32985838, at *7 (C.D. Cal. Oct. 22, 2002) ("This court is reluctant to embrace a rule of standing that would allow an alleged wrongdoer to evade the court's jurisdiction so long as he does not injure the same person twice.") (quotation omitted)).

In *Henderson v. Gruma*, the plaintiffs brought a putative class action alleging they paid for a food product that was labeled with false and misleading statements. *Henderson*, 2011 WL 1362188, at *1. The defendant argued that the plaintiffs "do not have standing to seek injunctive relief because there is no threat of future injury, as '[the plaintiffs] . . . will not purchase the products at issue in the future'." *Id.* at *7. The court quickly rejected the argument, on the grounds that it would unjustifiably eviscerate any action brought to remedy false advertising:

> If the Court were to construe Article III standing for FAL and UCL claims as narrowly as the Defendant advocates, federal courts would be precluded from enjoining false advertising under California consumer protection laws because a plaintiff who had been injured would always be deemed to avoid the cause of the injury thereafter ('once bitten, twice shy') and would never have Article III standing. *Id.* (citation omitted).

The Northern District of California, in *Ries v. AriZona Beverages*, 287 F.R.D. at 523, elaborated on the *Henderson* court's reasoning. The *Ries* plaintiffs sought to represent a class of consumers who had purchased beverages with false and misleading labels. *Id.* at 527. The defendants argued that the plaintiffs were "not threatened by future harm because they are now aware of the contents of [the] beverages, and can no longer be deceived." *Id.* at 533. The court dispatched with this argument "with relative ease":

> Plaintiffs request to be relieved from false advertising by defendants in the future, and the fact that they discovered the supposed deception some years ago does not render the advertising any more truthful. Should plaintiffs encounter the denomination "All Natural" on an AriZona beverage at the grocery store today, they could not rely on that representation with any confidence. This is the harm California's consumer protection statutes are designed to redress.

Lakewood also contends that Plaintiff must allege she intends to purchase the Juices in the future. Motion at 24-25. But this Court has held that, in the absence of any evidence that a defendant will no longer commit the practices at issue, and unless it is "absolutely clear that the allegedly wrongful behavior could not reasonably expected to recur," plaintiff meets the burden that she is "realistically threatened by a repetition of the violation," sufficient to have standing to seek injunctive relief. *Dioquino v. Sempris*, 2011 WL 13127143, at *4 (C.D. Cal. Dec. 8, 2011) (internal citations omitted). Thus, under California law, Plaintiff has standing to pursue prospective injunctive relief.

### E.  Lakewood's laches argument is premised upon an inapposite body of law.

California's default rule provides that a claim accrues at "the time when the cause of action is complete with all of its elements." *Fox v. Ethicon Endo-Surgery, Inc.*, 35 Cal. 4th 797, 806-09 (2005). Specifically, it "accrues 'when [it] is complete with all of its elements'—those elements being wrongdoing, harm, and causation." *Nguyen v. W. Digital Corp.*, 229 Cal. App. 4th 1522, 1538 (2014), citing *Pooshs v. Phillip Morris, USA, Inc.*, 51 Cal.4th 788, 797 (2011). As alleged in the Complaint, Plaintiff's harm occurred when she purchased the Juices ( ¶11). The Motion to Dismiss does not allege that the Juice purchases made by Plaintiff occurred outside the statutes of limitations periods for the claims alleged in the Complaint. Those purchases are the only relevant triggering event in this matter.

Lakewood's laches argument solely relies upon actions between business competitors alleging various violations of the Lanham Act. Every case is inapposite to the facts alleged here.

*Jarrow Formulas, Inc. v. Nutrition Now, Inc.*, 304 F.3d 829 (9th Cir. 2002), a suit between business competitors, alleged violations of the Lanham Act. The Lanham Act contains no explicit statute of limitations. The court had to decide whether laches acted as a bar to one competitor suing the other *when the analogous state statute of limitations period had expired*. In *Jarrow*, the manufacturer/plaintiff had confronted the manufacturer/defendant regarding the alleged violation seven years prior to filing the lawsuit. The court reasoned that waiting seven years to file, after the date of the confrontation, was undue delay. *Jarrow* at 838, 839. The court explained that the record showed that the president of one company had spoken directly with the president of the other company regarding the alleged Lanham Act violation indicating knowledge of the Lanham Act violation, yet the president who brought the violation to the attention of the president of violator company failed to file a legal action in a timely manner. *Jarrow* at 832, 835, 838**.** Significantly, the court specifically held "…if the plaintiff legitimately was

unaware of the defendant's conduct, there is no bar to suit." *Jarrow* at 838. Moreover, it is the unreasonable delay in bringing the action that must be the cause of any prejudice to the party asserting laches. *Jarrow* at 842.

The facts here are completely distinguishable. Plaintiff first informed Florida Bottling of its violations via her Consumer Legal Remedies Act letter, dated June 7, 2016. Prior to her purchase of Lakewood's products, Plaintiff suffered no harm and thus would not have had standing to bring a claim.

*Miller v. Glenn Miller Prods..,* 454 F.3d 975 (9th Cir. 2006), also inapposite, is a trademark infringement case in which, on summary judgment, the court ruled that plaintiffs were barred by the doctrine of laches from taking legal action because there was undisputed evidence establishing that they should have known that the corporation was impinging on their trademark. Specifically, the court held that the plaintiffs had constructive knowledge of the corporation's activities—because of the receipt of relevant financial statements. *Miller* at 981. Here, the plaintiff is not a business competitor, nor is she a businessperson. Plaintiff would have no conceivable reason to be privy to any details as to the nature of the trademarks held by Florida Bottling or for any other product she buys at the grocery store. However, should the Court see the need to examine the evidence as to whether there is reason to conclude Plaintiff had constructive knowledge, it would be a matter decided upon summary judgment.[12]

---

[12] *B & B Hardware*, *Inc.* v. *Hargis Indus.,* __ U.S. __, 135 S. Ct. 1293 (2015) and *Magic Kitchen LLC v. Good Things Internat., Ltd.,* 153 Cal. App. 4th 1144 (2007) are inapposite trademark confusion and trademark infringement cases as well.

1

2  **V.    CONCLUSION**

3          For the foregoing reasons, Lakewood's Motion to Dismiss should be denied in

4  its entirety.

5

6  DATED:  June 19, 2017                    **BRAUN LAW GROUP, P.C.**

7

8                                          By: _____

9                                              Michael D. Braun
                                            1999 Avenue of the Stars, Suite 1100
10                                          Los Angeles, California 90067
                                            Telephone: (310) 836-6000
11                                          Facsimile:  (310) 836-6010
                                            Email: mdb@braunlawgroup.com
12

13

14                                         Stephen Gardner
                                           Amanda Howell
15                                         **STANLEY LAW GROUP**
                                           6116 N. Central Expressway, Suite 1500
16                                         Dallas, TX 75206
                                           Telephone:  (214) 443-4300
17                                         Facsimile:   (214) 443-0358
                                           Email: steve@consumerhelper.com
18                                                 ahowell@stanleylawgroup.com
19

20

21                                         Matthew J. Zevin
                                           **STANLEY LAW GROUP**
22                                         225 Broadway, Suite 1350
                                           San Diego, CA 92101
23                                         Telephone:  (619) 235-5306
                                           Facsimile:   (815) 377-8419
24                                         Email:    mzevin@aol.com
25

26

27

28

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

1                    Janet Lindner Spielberg

2                    **LAW OFFICES OF JANET LINDNER SPIELBERG**

3                    12400 Wilshire Boulevard, #400

4                    Los Angeles, California 90025
Telephone:   (310) 392-8801

5                    Facsimile:   (310) 278-5938
Email:        jlspielberg@jlslp.com

6

7                    *Counsel for Plaintiff*

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS