Squire Patton Boggs (US) LLP
Adam R. Fox (State Bar No. 220584)
adam.fox@squirepb.com
Joseph P. Grasser (State Bar No. 255156)
joseph.grasser@squirepb.com
555 South Flower Street, 31st Floor
Los Angeles, California 90071
Telephone: +1 213 624 2500
Facsimile: +1 213 623 4581

Attorneys for Defendant Florida Bottling, Inc.

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ESTELLE SHANE, on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>FLORIDA BOTTLING, INC.,<br><br>Defendant. | Case No. 17-cv-2197<br><br>**REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS OF DEFENDANT FLORIDA BOTTLING, INC.**<br><br>Date:        August 14, 2017<br>Time:       10:00 a.m.<br>Courtroom: 10 C<br>Judge:      Hon. S. James Otero |

1    Shane opposes the Motion to Dismiss her Complaint largely by assuming the conclusion that Florida Bottling's challenged labels are misleading. In so doing, she neglects to confront the omissions in her pleading to state a claim of false advertising required by Federal Rule of Civil Procedure 9(b). Shane likewise fails to plausibly reconcile her claim with governing FDA regulations and the legal presumption that Florida Bottling's FRESH PRESSED® mark is not deceptive. Shane also ignores the inconsistency between her proposed definition of the phrase "cold pressed" and the key authority upon which she relies for that proposition. Most fundamentally, Shane never explains how one can reasonably believe—as she pleads in her Complaint—that the juices she allegedly purchased were *both* "fresh" in a manner leaving "the food . . . unprocessed," *and* "cold pressed" by a "processing method that uses high pressure to kill bacteria." (Compl. ¶¶ 5 & 6). For these and other reasons discussed below, this Court should grant the motion.

### 1. Shane Fails To Meet Rule 9(b)'s Heightened Pleading Requirements

Shane does not dispute that Rule 9(b) governs her claims. Instead, she argues that she satisfies the rule. [Opp'n at 7:11]. Despite making this assertion, Shane fails to cite any allegations in her Complaint that provide Florida Bottling with notice of when or where she actually purchased its juices, and she offers only scant detail about the juices themselves. Thus, although Shane contends that "the defined Class Period" provides the time frame for her juice purchases [Opp'n at 12:8], her Complaint nowhere defines any "Class Period," and omits any details about when or where she bought any juice.[1] Without allegations of these facts, the Court should dismiss Shane's Complaint for failing to satisfy Rule 9(b). *See, e.g.*, *Yumul v. Smart Balance, Inc.*, 733 F. Supp. 2d 1117, 1124-25 (C.D. Cal. 2010) (dismissing complaint although—unlike Shane's—it had specifically alleged purchases during a

---

[1] The lack of geographic detail renders this Court's exercise of personal jurisdiction questionable, although Florida Bottling does not seek dismissal on that basis at this time. *See Bristol Myers Squibb Co. v. Superior Court,* 582 U.S. ___ (2017), No. 16-466, Slip op. at 9 (holding that state courts, at least, lack specific jurisdiction over claims brought by plaintiffs based on conduct that occurred outside the state).

SQUIRE PATTON BOGGS (US) LLP
555 South Flower Street, 31st Floor
Los Angeles, California 90071

1 defined class period, because "it does not allege with any greater specificity the
2 dates on which the purchases were made" or aver that the challenged packaging had
3 "remained consistent . . . during the entire class period"); *see also, e.g.*, *Edmunson
4 v. Procter & Gamble Co.*, No. 10-CV-2256-IEG NLS, 2011 U.S. Dist. LEXIS
5 53221, at *17 (S.D. Cal. May 17, 2011); *Ries v. Hornell Brewing Co.*, No. 5:10-cv-
6 01139-JF/PSG, 2011 U.S. Dist. LEXIS 36845, at *10-13 (N.D. Cal. Apr. 4, 2011).

**2.     The "Fresh Pressed" Labeling Is Neither False Nor Misleading**

Shane contends that the distinction between the use of the word "fresh" to modify a process like "pressed" and a food or beverage like "juice" is "contrived," "illogical" and "unsupported by a plain reading of 21 CFR 101.95." [Opp'n at 10:4-8]. She does not elaborate, nor could she, because any plain reading mandates an understanding of basic grammatical rules applicable to compound modifiers like "fresh pressed." Identifying a legal ruling as a "supreme court opinion" does not mean one is describing the decision as "supreme." Referring to a colleague as a "criminal defense lawyer" does not convey the view that she is guilty of a crime. And labeling seafood as "fresh frozen" does not identify it as "fresh," and instead describes it as having merely been quickly frozen "while still fresh." 21 C.F.R. § 101.95(b). The "fresh pressed" juice label modifies "pressed" in the same way.

Shane also mischaracterizes Florida Bottling's argument concerning the FRESH PRESSED® mark as somehow "immuniz[ing]" it from false advertising claims. [Opp'n at 11:2]. The trademark merely creates a "strong presumption" that the challenged mark is ***not*** deceptive. *Zobmondo Entm't, LLC v. Falls Media, LLC*, 602 F.3d 1108, 1113 (9th Cir. 2010). To assert a viable claim, it was therefore incumbent upon Shane to plead facts plausibly overcoming this presumption, which would remain "heavy" even at summary judgment. *Id.* at 1115. She did not do so.

**3.     The "Cold Pressed" Language is Neither False Or Misleading**

Shane argues that the "cold pressed" definitions advanced in her Complaint are basically consistent, but fails to confront the significance of the definition

SQUIRE PATTON BOGGS (US) LLP
555 South Flower Street, 31st Floor
Los Angeles, California 90071

REPLY BRIEF IN SUPPORT OF
DEFENDANT'S MOTION TO DISMISS.
17-CV-2197

announced by the Cold Pressure Counsel upon which her Complaint relies. The website cited in Shane's Complaint was attached to Florida Bottling's Request for Judicial Notice accompanying its Motion, and it reveals a "*difference* between Cold Pressure and Cold Pressed." RJN, Ex. C (emphasis added). "Cold Pressure" refers to pascalization, while "Cold Pressed" "refers to the technique by which fruits or vegetables are *squeezed or pressed* in a machine *to extract the juice* from them." *Id*. (emphases added). Shane's failure to reconcile this distinction with her other allegations renders her claims implausible. *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001) (explaining that "a plaintiff can . . . plead himself out of a claim by including unnecessary details contrary to his claims").

### 4. No Reasonable Consumer Would Be Misled By The Labels

Shane anchors much of her opposition to the "reasonable consumer" test embraced in the Ninth Circuit. [Opp'n at 2:17-22 & 4:17-7:9]. And yet she never explains how one can reasonably believe—as she pleads in her Complaint—that the juices she allegedly purchased were **both** "fresh" in a manner leaving "the food . . . unprocessed," **and** "cold pressed" by a "processing method that uses high pressure to kill bacteria." (Compl. ¶¶ 5 & 6). A reasonable consumer cannot harbor those two ideas simultaneously—that juice is both processed and unprocessed. Nor can a reasonable consumer who "read the label" (as Shane admits she did) arrive at the conclusion that the juices are not thermally processed when those labels disclose, in boldfaced font, that they are "**Pasteurized**." (Compl. ¶¶ 11 & 17).

Shane tries to salvage her claim by arguing "that reasonable consumers should be able to trust front-of-package representations, and are not 'expected to look beyond misleading representations on the front of the box' to discover the truth from small print found elsewhere on a product." [Opp'n at 2:17-21, quoting *Williams v. Gerber*, 552 F.3d 934, 939 (9th Cir. 2008)]. There are at least two problems with this argument. First, when Shane admitted in her pleading to having "read the label," she did not limit that admission to her having read only the front or

1  any other mere part of the label. (Compl. ¶ 11). She simply admitted to having read
2  the label, including the pasteurization disclosure on the back.

3  Second, even if Shane had not made this admission, the rule announced in
4  *Williams* is much narrower than she would have this Court believe, and it
5  accordingly does not govern the facts she has alleged. As recently explained in
6  *Ebner v. Fresh, Inc.*, 838 F.3d 958 (9th Cir. 2016), *Williams* merely "stands for the
7  proposition that *if* the defendant commits an act of deception, the presence of fine
8  print revealing the truth is insufficient to dispel that deception." *Id.* at 966. In
9  *Williams*, the deception manifested in images on the front of a snack package such
10 as oranges, peaches, strawberries, and cherries, even though none appeared on the
11 ingredient list, which instead identified sugar, corn syrup, and white grape juice
12 from concentrate. 552 F.3d at 936, 939. The present case presents no plain
13 misrepresentation, and is thus far closer to *Rooney v. Cumberland Packing Corp.*,
14 No. 12-CV-0033-H (DHB), 2012 U.S. Dist. LEXIS 58710, at *11 (S.D. Cal. Apr.
15 16, 2012) (concluding "that a reasonable consumer could not be led to believe that
16 Sugar in the Raw® contains unprocessed and unrefined sugar" despite its name).[2]

### 5. Shane Lacks Standing For Injunctive Relief

Although Shane pleads no facts from which one can reasonably infer any real and immediate threat that she will be wronged in the same way again, she cites this Court's opinion in *Dioquino v. Sempris*, No. CV 11-05556 SJO (MRWx), 2011 WL 13127143 (C.D. Cal. Dec. 8, 2011), among others, to maintain that she has standing for injunctive relief. *Dioquino* is inapposite. In that case, the complaint allowed the Court to reasonably infer that the defendant might again charge the plaintiff's credit card without authorization. *Id.* at *4. In this false advertising case, Shane cannot be injured in the same way in the future. *See Algarin v. Maybelline, LLC*, 300 F.R.D.

---

[2] Shane's warranty and restitution claims fail for these same reasons—because she has failed to plead facts sufficient to show that Florida Bottling's challenged statements are false or misleading. In addition, Shane's implied warranty claim fails because she nowhere alleges that Florida Bottling's products lack "even the most basic degree of fitness." *Birdsong v. Apple, Inc.*, 590 F.3d 955, 958 (9th Cir. 2009).

SQUIRE PATTON BOGGS (US) LLP
555 South Flower Street, 31st Floor
Los Angeles, California 90071

444, 458 (S.D. Cal. 2014) ("These consumers will not benefit from the injunctive relief as they cannot demonstrate a probability of future injury; if they know the 'truth' they cannot be further deceived.").[3]

### 6. Laches Bars Shane's Complaint Regarding "Fresh Pressed"

It is fundamentally inequitable for Shane to collaterally attack the validity of the otherwise incontestable trademark, FRESH PRESSED®, which Florida Bottling has indisputably used in commerce for decades. Resolution of this unfairness may be swiftly resolved by invoking the constructive notice provision in 15 U.S.C. §1072. Shane's characterization of the supporting case law as inapposite, and her 'pot versus kettle' strategy of faulting Florida Bottling for failing to identify her juice purchases outside the statutes of limitations (when she provides no dates for them in the Complaint) should not alter this result.

## II. CONCLUSION

The Court should dismiss Shane's Complaint without leave to amend in light of the binding nature of her judicial admissions rendering amendment futile. *See Reddy v. Litton Indus. Inc.*, 912 F.2d 291, 296-97 (9th Cir. 1990).

Dated: June 30, 2017

Respectfully submitted,

By: /s/ *Adam R. Fox*

Adam R. Fox
adam.fox@squirepb.com
Joseph P. Grasser
joseph.grasser@squirepb.com

Attorneys for Defendant
Florida Bottling, Inc.

---

[3] There is admittedly a split among the district courts in the Ninth Circuit on this point, but the better view is that "Article III's standing requirements take precedence over enforcement of state consumer protection laws." *See In re Conagra Foods, Inc.*, 302 F.R.D. 537, 575 (C.D. Cal.2014); *see also, e.g., Torrent v. Yakult U.S.A., Inc.*, No. 8:15-cv-00124-CJC-JCG, 2016 U.S. Dist. LEXIS 130700, at *10-11 (C.D. Cal. Jan. 5, 2016) (collecting cases and concluding that Article III's requirements trump any countervailing policy considerations supporting the pursuit of injunctive relief).